**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,[1]<br><br>                  Debtors. | Chapter 11 Case No.<br><br>22-50073 (JAM)<br><br>(Jointly Administered) |
| Pacific Alliance Asia Opportunity Fund L.P.,<br><br>                  Plaintiff,<br><br>vs.<br><br>Ho Wan Kwok,<br><br>                  Defendant. | Adv. Pro. No.  22-05032 (JAM) |

**MOTION FOR AN ORDER (I) PRELIMINARILY ENJOINING THE DEBTOR FROM PUBLISHING PERSONAL INFORMATION ABOUT CERTAIN PARTIES AND THEIR RELATIVES ONLINE, (II) DIRECTING THE DEBTOR TO REMOVE ANY SUCH EXISTING POSTS, (III) GRANTING A TEMPORARY RESTRAINING ORDER IN THE EVENT THAT THE COURT ORDERS A HEARING ON THIS MOTION; AND (IV) REFERRING THE DEBTOR'S CONDUCT TO THE US ATTORNEY'S OFFICE <u>FOR THE DISTRICT OF CONNECTICUT</u>**

Pacific Alliance Asia Opportunity Fund L.P. ("<u>PAX</u>") hereby brings this motion and

incorporated memorandum of law under Local Civil Rule 7, as incorporated by Local

Bankruptcy Rule 7007-1,[2] for an order under 11 U.S.C. § 105(a) and Rule 65 of the Federal

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) ("<u>Kwok</u>" or the "<u>Individual Debtor</u>"), Genever Holdings Corporation ("<u>Genever BVI</u>"), and Genever Holdings LLC (last four digits of tax identification number: 8202) ("<u>Genever US</u>").  The mailing address for the Trustee, Genever BVI, and Genever US is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

[2] PAX requests oral argument on this motion, except to the extent this Court decides to grant a temporary restraining order solely on the pleadings.

Rules of Civil Procedure, as made applicable by Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 7001(7) of the Bankruptcy Rules, for a temporary restraining order and a preliminary injunction restraining and enjoining the Debtor, Ho Wan Kwok, his officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with the foregoing, from:

(i)   posting false and harassing online materials about the chapter 11 Trustee Luc Despins (the "Trustee"), PAX's or PAG's officers or employees, counsel to the Trustee or PAX, and any of their respective relatives;

(ii)  publishing online the home addresses and other personal information of the Trustee, PAX's manager PAG's Chairman Shan Weijian, PAX's or PAG's other officers and employees, and their respective relatives; and

(iii) encouraging, inciting, suggesting, or directly or indirectly funding protests at the home or office the Trustee, PAX's or PAG's officers or employees, counsel to the Trustee or PAX, and any of their respective relatives (including ex-spouses).

PAX also requests that the Court order Kwok to remove all existing social media posts that:

(i)   contain personal information about the Trustee, PAX or PAG officers or employees, counsel to the Trustee or PAX, and any of their respective relatives; and

(ii)  encourage, incite, or suggest protests, harassment, doxing,[3] or similar conduct toward the Trustee, any PAX or PAG officers or employees, counsel to the Trustee or PAX, and any of their respective relatives.

---

[3] "Doxing" is the act of publicly identifying or publishing private information about someone especially as a form of punishment or revenge. *Dox*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/dox (last visited Nov. 21, 2022).

PAX believes a temporary restraining order should be entered immediately to prevent harm to any individual and to the bankruptcy process. PAX will be prepared to conduct a preliminary injunction hearing at the Court's earliest convenience thereafter. In support of the relief requested, PAX states the following:

## PRELIMINARY STATEMENT

1.      This emergency motion is necessitated by the Debtor's recent decision to take his already hyper-aggressive, extra-legal online attacks against PAX, his largest creditor, and the Trustee to a new and dangerous level. Online bullying and smear campaigns against PAX and its counsel, and the Trustee and his counsel, are standard operating procedure for Kwok—his default response to anyone who challenges him is to accuse them of being an agent of the Chinese Communist Party ("CCP") in an online harassment and doxing campaign.[4] In the face of proceedings before this Court that may result in a contempt order and escalating discovery into Kwok's secret web of affiliates and shielded assets, the Debtor and his followers have escalated their cyberterrorist social media campaign aimed at maligning, defaming, doxing, and harassing PAX and PAG,[5] their officers and employees, the Trustee,[6] and their respective counsel. But Kwok's current behavior has reached a new and more dangerous low: he and his followers are harassing the families (including the children) of his targets, including by publishing their personal information. Kwok and his followers are attacking family members by

---

[4] *See* Declaration of Peter Friedman in support of Motion of Pacific Asia Alliance Asia Opportunity Fund L.P. for an Order (i) Preliminarily Enjoining the Debtor from Publishing Personal Information About Certain Persons Online, (ii) Directing the Debtor to Remove Any Such Existing Posts, and (iii) Granting a Temporary Restraining Order Pending a Final Hearing ("Friedman Decl."), Ex. 1, Moss Aff. in Support of PAX's Opposition to Nonparty Movant Yvette Wang's Motion to Quash, Ex. 2, PAX v. Kwok, Index No. 632077/2017 (N.Y. Sup. 2017), Dkt No. 755 (Transcript of Kwok's YouTube in which Kwok accuses PAX of conspiring with the CCP).

[5] PAG, PAX's parent company, is a Hong Kong based investment group.

[6] *See, e.g.,* ███████████████████████████████████████

name, publishing home addresses, identifying employers, and calling for a minimum of 90 days of protests outside their residences and offices.

2.      As Kwok's lawyers boasted in this Court, he has more than one million followers on social media.[7]  These loyal followers received his recent message loud and clear and sprang into action:  beginning on Sunday morning, November 20, 2022, Kwok's supporters protested outside of the residences of:  PAG's Chairman's ████████████████████, the Trustee, the Trustee's ████████  and the Trustee's ████████  among others.  The protesters blocked traffic, distributed leaflets saying, among other things, that they were protesting against "targeted racial and political persecution of Chinese Americans," and that:

> Your neighbor, Luc Albert Despins and his law firm Paul Hastings LLP are benefactors and enablers of the CCP's crimes against humanity, infiltration of the U.S. legal and financial systems, and persecution of Chinese dissidents abroad. Despite the CCP's ongoing genocide in Xinjiang and its history of human rights abuses, Paul Hastings has acted on behalf of the CCP to hunt Chinese dissidents and to destroy the livelihood of Chinese freedom fighters.

3.      The following day, November 21, 2022, protesters organized outside offices of O'Melveny & Myers LLP in New York City and in Washington, D.C.  They held signs with pictures of O'Melveny attorneys (Mr. Sarnoff, Mr. Friedman, and Mr. Harbach) and O'Melveny's Chairman, declaring them operatives of the CCP.  Protesters staged similar demonstrations outside the New York offices of Paul Hastings LLP, displaying defamatory signs containing pictures of the Trustee and his counsel, Mr. Bassett and Mr. Luft.  One of the protesters in New York attempted to gain entry into Paul Hastings' interior office space by claiming, falsely, that he had a meeting scheduled with Mr. Bassett.

---

[7] *See* Friedman Decl. Ex. 2 (Mar. 1, 2022 Hr'g Tr. at 16:8–15).

4.      Also on November 21, 2022, the Trustee received reports that a representative from NFSC—an organization co-founded by Mr. Kwok—threatened that the Trustee "will live under horror for the rest of [his] life."

5.      Finally, during the November 21, 2022 status conference, this Court asked Kwok's counsel whether he could represent that Kwok would cease this pattern of conduct. Kwok's counsel responded "no."

6.      This wrongful conduct is clearly designed to intimidate PAX from pursuing its claims and the Trustee from discharging his duties in this chapter 11 case.  Kwok knows this case is going badly for him:  a trustee has been appointed, his yacht has been forced back within reach of creditors, he has been required to turn over all of his economic interests and privileged documents to the Trustee, and he faces a new contempt finding for failing to do so.  More consequences loom in the immediate future with a hearing over prejudgment remedies that could permit the Trustee to freeze $35 million in the yacht reserve account that purportedly belongs to Kwok's daughter's shell company.  Kwok's fraudulent efforts to disclaim ownership of Genever BVI and his apartment in the Sherry Netherland are being undone.  And the bar date for claims against him is approaching.  Kwok's years-long scheme to delay, hinder, and defraud Creditors is unravelling in federal court.  And he knows it.  So, he has lashed out at Creditors and the Trustee by attacking their families, hoping to intimidate and dissuade them from exercising their legal rights and responsibilities.

7.      This Court has the power—and, PAX submits, responsibility—to order Kwok to stop this malicious and dangerous behavior.  As explained in more detail below, the All Writs Act and Section 105(a) of the Bankruptcy Code grant the Court broad authority to act to preserve the integrity of these proceedings and protect the representatives of the participants (and their

family members, some of whom are minors) from improper threats and intimidation.  Issuance of

a narrowly tailored temporary restraining order and preliminary injunction is appropriate—and

necessary—under these circumstances.  Moreover, bankruptcy courts restrain parties like Kwok

from disseminating false and misleading communications (*i.e.*, issue a "gag order") to protect the

integrity of the proceedings—a step this Court should promptly take here.

8.    To ensure the safety and physical well-being of those involved, as well as to

protect the orderly administration of this bankruptcy case, PAX respectfully requests that the

Court promptly grant the requested relief.

## JURISDICTION

9.    This Court has subject matter jurisdiction over this adversary proceeding and this

motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

Pursuant to Bankruptcy Rule 7008, PAX consents to the entry of final orders or a final judgment

by this Court in this adversary proceeding.  Venue is proper in this District pursuant to 28 U.S.C.

§ 1409.

## FACTUAL BACKGROUND

A.    **PAX obtained a $116 million judgment against Kwok in state court after Kwok
failed to repay a loan.**

10.    Nearly eleven years ago, PAX signed a loan agreement with a Kwok-owned

entity called Shiny Times.[8]  Kwok personally guaranteed that loan.[9]  Despite multiple repayment

extensions and PAX's numerous attempts to settle the debt, Kwok has never repaid the loan.[10]

---

[8] ECF 57-2 (Friedman Decl. Ex, 6) at 2.
[9] *Id.*
[10] *Id.* at 7.

11.      PAX sued Kwok for breach of the personal guarantee contract on April 18, 2017 in New York State Supreme Court.[11]  Following nearly four years of litigation, on February 3, 2021, PAX secured a judgment against Kwok for $116,402,019.57.[12]  PAX then "undertook a year's-long effort to enforce [the] judgment by first identifying and then attempting to levy upon Kwok's assets in the United States."[13]  This was no small task because, as Justice Ostrager found, "Kwok, who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members."[14]  Kwok has yet to repay any of the $116,402,019.57 judgment, which accrued post-judgment interest at the rate of 9 percent per year.[15]

## B.    The State Court found Kwok in contempt and ordered him to pay $134 Million.

12.      Part of PAX's effort to enforce the judgment involved Kwok's luxury super-yacht, the Lady May.  Although Kwok claims to have no assets,[16] he has (at a minimum) beneficial ownership of the Lady May, purchased in 2015 for € 28 million.[17]  On September 30, 2020, Justice Ostrager issued a temporary restraining order preventing Kwok "from making or causing any sale, assignment, transfer or interference with any property in which he has an interest…."[18]  Two weeks later, on October 15, 2020, Justice Ostrager specified that this restraint

---

[11] ECF 57-2 (Friedman Decl. Ex. 7).

[12] ECF 57-2 (Friedman Decl. Ex. 8) at 2.

[13] ECF 57-2 (Friedman Decl. Ex. 1) at 1.

[14] Id.

[15] N.Y. C.P.L.R. 5004 (McKinney's 2022); ECF 57-2 (Friedman Declaration, Ex. 8) at 2; see also ECF 57-2 (Friedman Decl., Ex. 9).

[16] See ECF 49 (United States Trustee's Objection to Debtor's Motion for Extension of Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs) at ¶ 12 (during his Initial Debtor Interview with the United States Trustee, Kwok "disclosed he has no bank accounts, no credit cards, is not employed such that he earns income, and that all of his living expenses are paid for and through an entity known as Golden Spring (New York) Ltd. ('Golden Spring'). [He] also disclosed that he does not directly own any real estate, does not own any cars, and does not insure any assets.")

[17] ECF 57-2 (Friedman Decl. Ex. 1) at 4.  Although Kwok denies it, he also owns a full-floor luxury apartment at the Sherry Netherland hotel that is currently listed for sale at $45 million in connection with a related bankruptcy proceeding in the Southern District of New York.

[18] ECF 57-2 (Friedman Decl. Ex. 2).

on Kwok included the Lady May.[19]  But unbeknownst to Justice Ostrager and PAX, the Lady

May had already left New York for Florida on or about October 9.[20]  The yacht then went to the

Bahamas, and finally to Europe.[21]

13.      In response, PAX filed a contempt motion[22] and on March 16, 2021, the court

issued a conditional order of civil contempt directing Kwok or the boat's registered owner to

return the Lady May to the court's jurisdiction by May 15, 2021, and imposing a $500,000 fine

for every day thereafter that the yacht remained beyond its jurisdiction.[23]  The New York

Appellate Division, First Department, unanimously affirmed the trial court's order, finding that

(i) PAX had "established by clear and convincing evidence that [Kwok had] violated a lawful

clear mandate of the court, of which he had knowledge, and that such violation resulted in

prejudice to [PAX's] rights…"[24]; and (ii) "the daily fine of $500,000 was intended to strongly

encourage [Kwok] to purge himself of the contempt."[25]  Accordingly, the First Department

instructed Justice Ostrager to "proceed with an evidentiary hearing to resolve a dispute as to

ownership and control of the yacht, and to assess appropriate penalties" before issuing a final

contempt order.[26]

14.      Justice Ostrager held that evidentiary hearing on February 2, 2022.  After hearing

testimony from seven witnesses,[27] Justice Ostrager concluded that "[t]he testimony adduced at

the hearing out of the mouths of [Kwok]'s witnesses clearly and convincingly demonstrated that

---

[19] ECF 57-2 (Friedman Decl. Ex. 3) at 1.
[20] *See* ECF 57-2 (Friedman Decl. Ex. 10).
[21] *See id.*
[22] *See* ECF 57-2 (Friedman Decl. Ex. 11); *see also* ECF 57-2 (Friedman Decl. Ex. 12).
[23] ECF 57-2 (Friedman Decl. Ex. 4). (Initial Contempt Order) at 2.  In other words, the court provided Mr. Kwok a full two-month grace period to return the yacht and thereby avoid any fine at all.
[24] *Pac. All. Asia Opportunity Fund L.P.*, 199 A.D.3d at 423.
[25] *Id.* at 424.
[26] *Id.*
[27] Kwok invoked his Fifth Amendment rights in response to PAX's discovery efforts and Kwok did not testify at the February 2 hearing.  *See* ECF 57-2 (Friedman Decl. Ex. 1) at 3.

Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process."[28]  The court further found that "[n]ot only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht."[29]  As a result, Justice Ostrager entered the February 9 order of contempt (the "Contempt Order"), which imposed a $134 million fine, based on the "268 days," "[a]s of February 7, 2022," that "the Lady May ha[d] remained outside the jurisdiction of the Court."[30]

### C.      Rather than pay the fine, Kwok filed for bankruptcy.

15.      Consistent with his past practice of flouting court orders, Kwok failed to pay the contempt fine.  Instead, on February 15, 2022, Kwok filed for bankruptcy in this Court.[31] Kwok's bankruptcy petition listed $50,001-$100,000 in assets—omitting the valuable Lady May entirely.[32]

16.      On March 1, 2022, PAX filed a motion to confirm the inapplicability of the automatic stay with respect to the Contempt Order, arguing that the automatic stay—which is for honest, good-faith debtors—was not meant to shield debtors like Kwok from the consequences of defying court orders and assaulting the dignity of the judicial system.[33]  Faced with the prospect of this Court permitting post-petition enforcement of the Contempt Order, Kwok came to the negotiating table, and the parties filed a stipulated order compelling the return of the Lady May to Connecticut waters.[34]  The agreement required that an entity called HK International Funds Investments (USA) Limited ("HK USA")—the purported technical owner of the Lady May—deposit $37 million with an escrow agent to secure HK USA's return of the yacht to this

---

[28] *Id.* at 4.
[29] *Id.* at 8.
[30] *Id.* at 10; *see also* ECF 57-2 (Friedman Decl. Ex. 2 (Final Contempt Order)).
[31] Voluntary Petition, ECF No. 1.
[32] *Id.* at 7.
[33] ECF No. 57 at 2–3.
[34] ECF No. 299.

jurisdiction, and to establish a reserve for all repairs necessary to restore the yacht to good working order.[35]

17.    On March 21, 2022, the United States Trustee ("UST") moved for appointment of an examiner or chapter 11 trustee.[36]  On April 6, 2022, PAX moved to dismiss the case, or in the alternative, joined the UST's motion for appointment of a trustee.[37]  Faced with the prospect of a trustee or examiner investigating his assets, Kwok consented to PAX's motion to dismiss on May 11, 2022, citing PAX's reasonable discovery efforts (which he dubbed "unrestrained legal warfare") as a reason.[38]

**D.    This Court appointed a Trustee to oversee Kwok's assets.**

18.    This Court granted PAX's motion to appoint a trustee on June 15, 2022, and denied the motion to dismiss.[39]  On July 8, 2022, over Kwok's objection[40] this Court entered an order appointing Luc Despins as Trustee.[41]  On August 10, 2022, the Court entered an order (the "Corporate Governance Order") granting the Trustee control over all of the Debtor's economic and corporate governance rights in Debtor-controlled entities and, directing the Debtor to "cooperate with the Trustee to enable the Trustee to perform his duties" and "surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate."[42]

19.    On August 16, 2022, the Court granted the Trustee's application for Rule 2004 discovery with respect to the Debtor, his legal and financial advisors, and entities and individuals

---

[35] ECF No. 299 ¶¶ 3, 11.
[36] ECF No. 102.
[37] ECF No. 183.
[38] ECF No. 344 at ¶ 8.
[39] ECF No. 465.
[40] ECF No. 531.
[41] ECF No. 523.
[42] ECF No. 717, ¶¶ 2–3.

affiliated with the Debtor.[43]  And, on October 28, 2022, the Trustee filed a motion to compel the Debtor, his wife and daughter, his business associates and affiliated entities to comply with Rule 2004 orders and with the subpoenas issued by the Trustee.[44]

**E.    Kwok faces yet another contempt motion and additional discovery.**

20.    On October 4, 2022, the Trustee filed a motion asking the Court to hold the Debtor in civil contempt for failure to comply with the corporate governance order.[45]  On November 16, 2022, the Court held a hearing on this motion.[46]

21.    On October 11, 2022, the Trustee brought an adversary complaint against Bravo Luck and Qiang Guo (the Debtor's son) seeking relief from the Debtor's abuse of the corporate form to judgment-proof himself and keep his assets outside the reach of creditors.[47]

22.    On November 8, 2022, the Trustee filed a motion for order setting bar dates for filing proofs of claim.[48]  On November 11, 2022, Kwok was deposed by the Trustee.[49]

23.    On November 17, 2022, the Court entered an order directing joint administration of related chapter 11 cases, thereby transferring the bankruptcy proceedings of Genever Holdings, LLC—a Kwok entity that had filed for chapter 11 protection in the Southern District of New York—to this Court.[50]

---

[43] ECF Nos. 757, 756, 758.
[44] ECF No. 1046.
[45] ECF No. 913.
[46] ECF No. 1101 (hearing held and continued).
[47] ECF No. 940.
[48] ECF No. 1072.
[49] ECF No. 1108 (sealing order referencing the Debtor's recent deposition).
[50] ECF No. 1106.

**F.    With the case going poorly for Kwok, Kwok turns to his large social media following.**

24.    Over time, Kwok has amassed over 1 million followers across various digital and media platforms such as YouTube, GTV, Twitter, and Gettr.[51]  Kwok has a "verified account" on Gettr, as indicated by the red "V" next to his username,[52] and posts several times a day to an audience of more than 171,000 Gettr followers.[53]

**G.    Kwok published the home addresses of the parties, their officers and employees and family members, and their counsel, urging his followers to protest at the homes.**

25.    On November 16, 2022, Kwok reposted and pinned[54] on Gettr, one of his primary social media outlets, a post by the "Himalaya Global Alliance" (originating from a Gettr account called "NFSC Speaks") urging supporters to protest at the addresses of "known CCP[55] operatives and sympathizers."  The communication (the "Call to Protest") published (i) the home address of the Trustee; (ii) the home addresses of the Trustee's ███████████ and his ██████████; (iii) the New York office address of the Trustee's counsel, Paul Hastings LLP,[56] (iv) the home addresses of the Chairman of PAG, Mr. Shan, and his family members; (v) the New York office address of PAX's counsel, O'Melveny & Myers LLP.[57]

26.    The "NFSC" in "NFSC Speaks" is the "New Federal State of China," an organization co-founded by Mr. Kwok.[58]  Indeed, it was Kwok himself—along with Steve

---

[51] *See* Friedman Decl. Ex. 2 (March 1, 2022 Hr'g Tr.) at 16:8-15.
[52] GETTR, *How can I get a Verified account?,* https://support.gettr.com/hc/en-us/articles/4836960749587-How-can-I-get-a-Verified-account-
[53] ████████████████████████████████  Mr. Kwok's profile also notes that he has more than 800,000 "Total Followers."  *Id.*
[54] To "pin" a post means "to fix (something, such as a message, a file, or an icon) in place for convenient viewing or access."  *Pin*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/pinning.
[55] Chinese Communist Party.
[56] *See* ECF No. 1133 (Ex. A).
[57] *Id.*
[58] Kwok's affiliation with this group is reflected on his Gettr page, which is titled "We Are the Citizens of the NFSC."

Bannon—who announced the launch of NSFC on social media and in online videos.[59]  In other words, the post Kwok pinned to his personal Gettr account came from an organization that he organized and is closely associated with him.

27.    The Debtor has also reposted on his Gettr page clips from a longer video recorded on November 16, 2022 (the "November 16 Video"), originally posted by NFSC Speaks, that contains numerous attacks against PAX and Mr. Shan (as well as the Trustee and the Trustee's law firm, Paul Hastings).  The full November 16 Video, which can be viewed at ███████████████████████████ is replete with outrageous baseless and vexatious attacks against the PAX and the Trustee:

    a.  accusing Mr. Shan of using "money from both American and Chinese people . . . to enslave the Chinese people," and being a "spy and a thief stealing pension funds" for the Communist Party.[60]

    b.  alleging that the Trustee is "acting for the interest of the CCP,"[61] and repeatedly showing a photo of the Trustee together with the map of China, colored red with a prominent hammer and sickle.[62]

    c.  threatening the Trustee by saying that the NFSC movement and its followers will "make sure every single person in your life . . . know[s] what you have done to the Chinese people . . . that those concentration camps were able to be built because of you."[63]

---

[59] *See, e.g.*, *Steve Bannon & Guo "Miles" Wengui Announce New Federal State of China*, https://www.youtube.com/watch?v=BXoXYjloBTc (last visited Nov. 21, 2022), at 1:03 (showing Kwok and Bannon together announcing that "we chose June 4th as the day for the establishment of the New Federal State of China").

[60] *See* ████████████████████████████████████████████

[61] *Id.* at 5:40–5:48.

[62] *See, e.g., id.* at 8:13–8:29, 8:46–9:06, 9:40–10:02, 34:12–34:23.

[63] *Id.* at 34:00–35:32.

    d.   threatening the Trustee by stating "you have ███████████, right, I hope they are watching this,"[64] and promising to "make sure they know they should be shameful of having a father like you."[65]

    e.   calling the Trustee and PAX's counsel "American traitors" and "enablers of evil" who help build concentration camps on behalf of the CCP and whose "hands are stained with Chinese people's blood," and comparing the Trustee and PAX's counsel to lawyers "going after the Jews" during the Holocaust. [66]

28.    On November 18, 2022, Kwok reposted yet another video (the "November 18 Video") that again makes numerous baseless and outrageous attacks in an effort to intimidate the PAX's counsel and the Trustee, including the following:

    a.   displaying pictures of the Trustee as well as PAX's attorneys (including Messrs. Sarnoff, Friedman, and Harbach)[67] and accusing them of, among other things, being "worse than a Nazi collaborator in World War Two."[68]

    b.   threatening the Trustee and PAX's counsel by saying that, among other things, they will "make sure every single person in your life . . . knows about the horrible things that you have done to the Chinese people."[69]

    c.   displaying pictures of each of the Trustee's ███████████ identifying their names and employers, and, among other outrageous comments, claiming that

---

[64] *Id.* at 25:50–25:59.
[65] *Id.* at 21:54–22:05.
[66] *Id.* at 24:00–25:04.
[67] *See* ███████████████████████████████████████████████████████████████
[68] *Id.* at 30:20–27.
[68] *Id.* at 32:40–32:46
[69] *Id.* at 30:00–30:23.

"your father [the Trustee] . . . is literally putting millions of Uighurs in concentration camps."[70]

    d.   displaying pictures of PAX's attorneys, the Trustee, and the Trustee's ███████ together with a red map of China, with a prominent hammer and sickle.[71]

29.    On November 18, 2022, PAX's counsel learned that several local police departments contacted Mr. Shan's family members to warn them that protests were imminent.

30.    On November 19, 2022, Kwok reposted another NFSC Speaks post, displaying four images:  one of the Trustee edited to appear as if he is in Chinese military uniform, and one of each of the Trustee's ███████ LinkedIn profiles, identifying their employers.  The caption alleges that the Trustee is "aiding and abetting CCP . . . to persecute the Chinese people."

31.    Some of the NFSC posts, which the Debtor re-posted to his own Gettr page, included violent replies to NFSC's post.  For example, one commenter on an NFSC post threatened that Mr. Shan's family "will become the price of their father or husband's evil deeds. This is actually what it means 'wife sacrifice' as well as 'child sacrifice.'"[72]

32.    On November 20, 2022, a group of Debtor-aligned protestors gathered to protest outside the Trustee's residence, the Trustee's ███████ residence, and the homes of several members of Mr. Shan's family.  The actions of these protestors are detailed in Trustee's November 21, 2022 pleading [ECF No. 1133] and incorporated by reference herein.

**H.    Kwok's doxing follows a months-long smear campaign against PAX, the Trustee, and their respective representatives.**

---

[70] *Id.* at 31:00–35:27.
[71] *See id.*; *see also supra* ns.59, 65.
[72] *See* ███████████████████████ (the post on which this comment was made has since been removed by @NFSCSpeaks and @MilesGuo).

33.    Although this may be the first time Kwok has published home addresses and other personal information about his legal adversaries' family members, it has long been Kwok's practice to stoke anger and vitriol amongst his followers by spreading falsehoods via his social media megaphone.  For instance, in a July 8, 2022 post, Kwok accused PAX of committing fraud and colluding with the CCP regarding the appointment of a chapter 11 trustee in this bankruptcy.[73]

34.    Likewise, in another July 8, 2022 post, Kwok declared that all attorneys and officials "in collusion with PAG," PAX's parent company, including a named former O'Melveny & Myers partner, will end up in jail.[74]

35.    Moreover, in a July 10, 2022 post, Kwok called the Trustee a "scumbag" and a "garbage lawyer,"[75] and falsely proclaimed that the Trustee's firm receives 50% of its revenue from Communist China.[76]

36.    Kwok continued this improper pattern of conduct in a July 13, 2022 post that accused the Trustee of committing fraud in court and called on his followers to "dig out all bankruptcy cases in which [the Trustee] acted as trustee, and all IPO deals and transactions that [the Trustee's firm] has represented on behalf of the CCP's companies."[77]

37.    Again, in a July 17, 2022 post, Kwok accused specific lawyers representing PAX, by name, of colluding with the CCP.[78]

38.    And, in a July 19, 2022 post, Kwok urged his "fellow fighters" to "please spread the word[] about the revelations of the CCP military intelligence and truths about the trustee of

---

[73] *See* █████████████████████████████████
[74] *See* █████████████████████████████████
[75] *See* █████████████████████████████████
[76] *Id.*
[77] *See* █████████████████████████████████
[78] *See* ████

my bankruptcy case."[79]  In the video attached to this post, Kwok falsely declared that a former

O'Melveny partner's attorney license is "being revoked for sure" and stated that O'Melveny and

Paul Hastings are "evil."[80]

39.      Given Kwok's considerable influence amongst his audience, these posts often

draw thousands of "likes," "reposts" and/or "comments."

## ARGUMENT

### A.  Applicable Legal Principles

40.      Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title."  11 U.S.C. § 105(a).  It also provides that the court is not precluded from, "sua sponte,

taking any action or making any determination necessary or appropriate to enforce or implement

court orders or rules, or to prevent an abuse of process."  *See In re Homaidan*, 640 B.R. 810,

*840 (Bankr. E.D.N.Y. 2022).  These equitable powers include the authority to issue injunctions

or temporary restraining orders.  *See id.*; *In re Roman Catholic Diocese of Syracuse, New York*,

628 B.R. 571, 583 (Bankr. N.D.N.Y. 2021) (granting a temporary restraining order under 11

U.S.C. § 105(a)).

41.      The All Writs Act empowers federal courts to "issue all writs necessary or

appropriate in aid of their respective jurisdictions."  28 U.S.C. § 1651(a).  The Second Circuit

has approved the use of the All Writs Act to ensure and bolster Federal Courts' power over their

proceedings.  *See United States v. Int'l Broth. Of Teamsters, Chauffeurs, Warehousemen &*

*Helpers of Am.*, 266 F.3d 45,  50–51 (2d Cir. 2001) (affirming the district court's issuance of an

injunction under the All Writs Act as necessary to "reach or enforce its decision in a case over

[79] *See* ██████████████████████████████████████████
[80] *See* ████████████████████████████████████████████

17

which it has proper jurisdiction"); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985) (if a court finds an injunction "necessary and appropriate," the All Writs Act empowers the court to "enjoin and bind" parties and non-parties "when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction."); *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 863 (2d Cir. 1988) (the All Writs Act authorizes federal courts to issue orders to persons who "are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."); *Nguyen Huu To v. Rubin*, 99 F.3d 400, 1995 WL 723130 (Table), at *2 (2d Cir. 1995) (affirming injunction under the All Writs Act where continued litigation "would seriously impair the federal court's flexibility and authority to decide a case").

42.     The All Writs Act occupies the interstices of federal judicial power where statutory remedies are absent. *Stabile*, 436 F. Supp. 2d at 414 ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute.").  Courts have granted relief under the All Writs Act "when traditional statutory procedures clearly are inadequate." *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 863 (2d Cir. 1988).

43.     A TRO and injunction are appropriate where the movant shows (i) a likelihood of success on the merits, (ii) a likelihood of irreparable injury in the absence of an injunction, (iii) that the balance of hardships tips in the movant's favor, and (iv) that the public interest would not be disserved by the issuance of an injunction. *Id.*  Bankruptcy courts issue injunctions to halt campaigns of online doxing and harassment—like that being carried out by the Debtor—or to otherwise protect the integrity of the bankruptcy process. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("Section 105(a) should be construed liberally to enjoin actions

that might impede the reorganization process."); *In re Fustolo,* 2015 WL 411760, at *3 (D. Mass. Jan. 30, 2015) (granting plaintiff's motion for a preliminary injunction against debtor to halt debtor's online campaign of harassment and cyber-bullying, which were intended to "intimidat[e] plaintiff and related persons and influence the claims asserted in, and the outcome of, these bankruptcy proceedings);[81] *Mgmt. Tech. Corp. v. Pardo (In re Mgmt. Tech. Corp.)*, 56 B.R. 337, 338 (Bankr. D.N.J. 1985) ("The bankruptcy courts have relied upon § 105(a) as a source of authority to resolve disputes which do not seem to be answered by other provisions of the Code.  Indeed, § 105(a) has been properly utilized to issue injunctions and other writs necessary to protect the estate from interference, and to ensure its orderly administration."); *In re Earl*, 140 B.R. 728, 741 (Bankr. N.D. Ind. 1992) ("The Court must preserve the integrity of the Bankruptcy system and prevent the abusive use of the Bankruptcy system invoked to thwart the legitimate rights of creditors….").

44.     Moreover, courts in the Second Circuit have issued orders enjoining communications (or "gagging orders") where it would interfere with the administration of a case. *See Matter of W. T. Grant Co.*, 6 B.R. 762, 764, 767 (Bankr. S.D.N.Y. 1980) (granting a preliminary injunction enjoining certain communications by creditors that contained "misleading information and material omissions" and would interfere with the Trustee's role of "insuring [sic] a fair and equitable administration of the estate in a manner consistent with 'the best interests of creditors'" and to protect creditors from information that would "unduly bias their understanding."); *S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 442 (2d Cir. 1987) (upholding

---

[81] Although the court later reconsidered and reversed its ruling with respect to the plaintiff's likelihood of success on the merits, it did so for reasons not applicable here.  *See In re Fustolo*, 2015 WL 1399045, at *9–10 (Bankr. D. Mass. Mar. 25, 2015) (reconsidering its prior ruling because of the relevant "statute's restrictive jurisdictional provision," which had not been brought to the court's attention previously, and which provided that "[p]roceedings … *shall be filed, heard and determined* in the superior court department or the respective divisions of the district court department or the Boston municipal court department having venue over the plaintiff's residence.").  No such "restrictive jurisdictional provision" applies to PAX's claims here.

district court order preventing parties from communicating with noteholders of a company in receivership without prior court approval, following publication by those parties of "unquestionably misleading" bulletins that made "made wholly unsubstantiated assertions" which interfered with the Special Master's duties to communicate with noteholders); *see also Off. Comm. of Equity Sec. Holders v. The Wilson Law Firm (In re Mirant Corp.)*, 334 B.R. 787, 795 (Bankr. N.D. Tex. 2005) (Court exercised its equitable powers to enjoin distribution of misleading solicitation materials by counsel to the shareholders committee).

**B.      Discussion**

**1.      PAX is likely to succeed on the merits of its claims.**

45.      To demonstrate a likelihood of success on the merits, a movant in a bankruptcy case need not show that the success is an absolute certainty; he need only make a showing that the probability of his prevailing is better than 50 percent. *In re Homaidan*, 640 B.R. 810, 840 (Bankr. E.D.N.Y. 2022).  PAX is entitled to injunctive relief here because it is likely to prevail on its claims under Section 105 and the All Writs Act.

46.      Simply put, the Debtor is using social media to attempt to frustrate the orderly operation of this case by doxing and harassing the Trustee and PAX.  This case has been a disaster for Kwok since it was filed and it is getting worse.  Through actions of his creditors and the Trustee, Kwok's efforts to delay, hinder and defraud his creditors are unraveling.  Because he cannot prevail in Court, Kwok is fomenting extra-judicial cyber bullying and harassment of his adversaries for the express purpose of interfering with their in-court pursuit of him.  The rule of law cannot be sustained if this conduct goes unchecked.  As Justice Ostrager observed, "if billionaire litigants can simultaneously seek to use Court process in New York and elsewhere in the United States while knowingly and intentionally violating Court orders, there is no rule of

law."[82]  There is equally no rule of law if Kwok is permitted to intimidate and harass Creditors

and the Trustee to dissuade them from participating in this case.  Kwok's acts plainly undermine

the Court's authority to oversee the fair and equitable administration of the bankruptcy case, and

attempt to subvert the bankruptcy process by alienating, threatening and intimidating Kwok's

largest creditor and the Trustee.  *Int'l Broth. Of Teamsters*, 266 F.3d at 50–51 (courts have

authority to issue injunctions to preserve their ability to "reach … its decision in a case over

which it has proper jurisdiction."); *see also Simerlein v. Toyota Motor Corp.*, No. 3:17-CV-1091

(VAB), 2019 WL 1435055, at *18 (D. Conn. Jan. 14, 2019) (Court granted preliminary

injunction under All Writs Act "in order to prevent this Court's jurisdiction from being

undermined by parallel litigation.").  As this Court has recognized, Kwok's false and baseless

comments about the Trustee's connections to the Chinese government are an "attempt to derail

Mr. Despins from carrying out his responsibilities." [] Decl. Ex. [ ], (7/21/22 Hrg. Tr. 97:20-

98:3).  The Court's observation was prescient, and as it turns out, an understatement.

47.     Courts have enjoined doxing and harassing conduct under Section 105 and the All

Writs Act in similar circumstances. *See, e.g.*, *In re Stabile*, 436 F.Supp.2d 406, 418 (E.D.N.Y.

2006) ("Accordingly, the Court finds that the All Writs Act is a proper basis and appropriate

remedy to address complaints of harassment made by a court-appointed monitor when the relief

sought includes an injunction or restraining order."); *Houghtaling v. Eaton*, 559 F. Supp. 3d 164,

172 (W.D.N.Y. 2021) (holding injunction proper under the All Writs Act to enjoin the plaintiff

from making filings which "serve to harass defense counsel and/or raise frivolous issues.").

48.     As another example, in *Century Indemnity Company v. Kosnoff (In re Boy Scouts

of Am.)*, Adv. Proc. No. 22-50071 (2022, Bankr. D. Del.), plaintiffs sought an injunction under

---

[82] *See* ECF 57-2 (Friedman Decl. Exhibit 1 at 10) (the "February 9 Contempt Order") at 10.

the All Writs Act and Bankruptcy Code section 105, enjoining the defendant—who was counsel

to certain creditors in the bankruptcy proceeding—from posting personal information online,

including the home addresses of parties to the case and their counsel.  The defendant had

published a barrage of doxing social media posts designed to harass and intimidate those parties,

similar to those at issue here.

49.    Judge Silverstein approved a consent order, enjoining the defendant from

publishing home addresses and personally identifying information of parties, and requiring the

defendant to withdraw existing social media posts containing such information.[83]  The Order

further enjoined the defendant from "interfering in any way with the integrity of the Chapter 11

Proceedings, including violating the protective order by tweeting confidential information or

taking any act that threatens, or encourages others to threaten the safety of the Mediating Parties,

their employees and counsel."  *Id.* at 2–3. Judge Silverstein noted that although the order was on

consent, it aligned with the order she had intended to enter:

> And, I will say, **it's consistent with the type of order that I was prepared to
> enter today**. And so, if it's consented to, I will enter the form as it is consented to.
> I will note that I -- as I've already said, **I was very troubled by what I read in the
> submissions** and -- the two submissions, the adversary proceeding, as well as the
> letter that I received today from debtors' counsel with respect to the depositions.

Friedman Decl. Ex. 3 (BSA Adv. Proc. Jan. 24 Hrg. Tr. 35:2–10.).

50.    The facts here are quite similar.  Kwok's doxing and other behavior designed to

harass and intimidate the parties to this court proceeding are not specifically addressed by any

applicable civil statute.  Yet, the social media posts—designed to impede the bankruptcy

proceedings and intimidate Kwok's largest creditor and the Trustee—are a clear attempt to derail

---

[83] *Id*. ECF No. 13.

the bankruptcy process. This is precisely the kind of improper conduct that the All Writs Act exists to address. The Court should thus grant the requested relief without hesitation.

51.    Invocation of the All Writs Act is particularly appropriate where, as here, a party is attempting to interfere with a Court order and frustrate the orderly progression of a case. This Court's Order of August 10, 2022 directed the Debtor to "cooperate with the Trustee as necessary to enable the Trustee to perform his duties, including, without limitation, the Trustee's investigation into the assets of the Debtor."[84] Mr. Kwok's attempt to disrupt and manipulate the Trustee's investigations through his intimidation of the Trustee and Creditors undermine this Court's Corporate Governance Order. This Court is thus well within its rights under the All Writs Act to issue an injunction restraining Mr. Kwok from interfering with the Trustee's investigation and to cease his threats against Creditors, the Trustee, their counsel, and respective relatives. *See In re Stabile*, 436 F.Supp.2d 406, 415 (E.D.N.Y. 2006) ("the use of the All Writs Act to enforce the Court's order seems quite appropriate.").

52.    Further, Courts have no problem issuing orders restraining communications that would interfere with the administration of a case. *See Matter of W. T. Grant Co.*, 6 B.R. at 764, 767 (enjoining misleading communications by creditors); *Am. Bd. of Trade, Inc.*, 830 F.2d at 442 (preventing parties from communicating with noteholders of a company in receivership without prior court approval); *In re Mirant Corp.*, 334 B.R. at 795 (enjoining distribution of misleading solicitation materials by counsel).

53.    Moreover, the Debtor has likely violated federal and state law by carrying out his vexatious online campaign of harassment and intimidation. For example, 18 U.S.C. § 1512(c)(2) makes it a crime to "obstruct[], influence[], or impede[] any official proceeding, or attempt[] to

---

[84] *See* ECF No. 717 (Corporate Governance Order).

do so." 18 U.S.C. § 1507 criminalizes picketing or parading near a residence of a court officer

with the intent to interfere with or obstruct justice, or with the intent of influencing any court

officer in the discharge of his duty. 18 U.S.C. § 119 (in pertinent part) criminalizes making

publicly available the restricted personal information (including homes addresses) of officers of

the court or their immediate family. Under 18 U.S.C. § 2261A(2), the federal stalking statute, it

is a violation for anyone to, "with intent to" "harass" or "intimidate," "use[] … any interactive

computer service" "to engage in a course of conduct that causes substantial emotional distress to

that person or places that person in reasonable fear of the death of, or serious bodily injury to"

that person or their immediate family members and spouses or intimate partners.

54.     Likewise, 8 U.S.C. § 1503(a) states that it is a crime for anyone to "corruptly, or

by threats or force, or by any threatening letter or communication, endeavors to influence,

intimidate, or impede any grand or petit juror, or officer in or of any court of the United

States." And the Second Circuit has held that a bankruptcy trustee is a court officer for purposes

of 18 U.S.C. 1503. *See U.S. v. Crispo*, 306 F.3d 71, 78 (2d Cir. 2002). In *Crispo*, the debtor

made several threats against the trustee, and attempted to have his daughter kidnapped, which the

trustee reported to the FBI. The debtor was convicted for violating section 1503, among other

things, and sentenced to 85 months in prison. On appeal, the Second Circuit "concluded that a

trustee is a court officer protected by the court-officer prong of § 1503." *Id.* at 78, 82.

55.     Similarly, under Conn. Gen. Stat. § 53a-183(a)(3), "[a] person is guilty of

harassment" "when with intent to harass, terrorize or alarm another person,[85] and for no

legitimate purpose, such person" "communicates or shares a photograph, video or words or

---

[85] Conn. Gen. Stat. §1-1. Words and phrases at (a) and (k) make clear that the words "person" and "another" may extend and be applied to communities, corporations, public or private, limited liability companies, societies and associations.

engages in any other form of communication to a digital, electronic, online or other meeting space, in a manner likely to cause terror, *intimidation* or alarm." "The basic rationale behind this section is the prohibition of acts which are intended to annoy, alarm, or harass an individual rather than the public in general." Commission Comment, Conn. Gen. Stat. § 53a-183(a)(3).

56.    Because PAX is likely to succeed on the merits of its claims, the Court should issue the requested injunctive relief. *See, e.g.*, See *Dziubla v. Piazza*, 59 Cal. App. 5th 140 (2020) (remanding for the lower court to consider an injunction after the defendant published the plaintiff's home address on a website in connection with ongoing litigation involving the parties).

**B.     PAX will suffer irreparable harm if the Court does not enjoin the Debtor's conduct.**

57.    Unless the requested relief is granted immediately, PAX will suffer irreparable harm. Irreparable injury is "harm where remedies available at law, such as monetary damages, are inadequate to compensate the plaintiff," and it is the most important prerequisite for the issuance of a preliminary injunction in a bankruptcy. *In re Homaidan*, 640 B.R. 810, 840 (Bankr. E.D.N.Y. 2022). Absent the requested relief, Mr. Shan and his family, and others implicated by Kwok's inflammatory and inciteful posts will continue to fear for their physical safety, and will potentially suffer physical harm at the hands of the Debtor's followers (who, as noted above, have already heeded the Debtor's call by traveling to the addresses in question). Similarly, Debtor's continued doxing and harassment of the Trustee and his family run the potential risk of interfering with the Trustee's focus and ability zealously to pursue any and all estate assets. Moreover, if Kwok's conduct continues unchecked, it may scare away other would-be witnesses and whistleblowers, and prevent them from coming forward and assisting the Trustee in his investigation. Monetary damages are a plainly inadequate remedy for this

danger.  *See Doe v. Connecticut Dep't of Pub. Safety*, No. 3:99CV135(RNC), 1999 WL

33266980, at *3 (D. Conn. Mar. 9, 1999) (granting temporary restraining order and finding

irreparable as "the posting of [plaintiff's] name on [an] internet registry [of sex offenders

maintained by defendants] is causing him physical and psychological harm.") (citing *Jolly v.

Coughlin*, 76 F.3d 468, 481 (2d Cir. 1996) ("money damages cannot compensate for physical

harm resulting from defendant's actions")); *see also Shapiro v. Cadman Towers, Inc.*, 51 F.3d

328, 331 (2d Cir. 1995) (affirming preliminary injunction and finding irreparable harm as

without the requested relief, plaintiff would be subject to a risk of "injury" and "humiliation").[86]

## C.    The balance of hardships weighs in PAX's favor.

58.    Without an injunction, PAX and the Trustee will continue to be subject to the

effects of the Debtor's online harassment and abuse.  By contrast, the Debtor will suffer no

hardship if the injunction is granted.  The Debtor can simply remove the posts in question and

cease inciting protests designed to intimidate his creditors from pursuing lawful remedies against

him in this federal bankruptcy case.  The publication of private information, such as the home

addresses and biographical information of Mr. Shan and his family, serves no legitimate purpose

and exposes these individuals and their families to danger.

59.    Both the Debtor's daughter and the Debtor have themselves expressly

acknowledged the potential danger that posting addresses can pose.  In her testimony in PAX's

New York State court action against the Debtor on February 2, 2022, Kwok's daughter Mei Guo

---

[86] After the Trustee wrote to the Court on Saturday, November 19, 2022 to alert it to the Debtor's escalating cyber bullying campaign, Kwok—presumably advised by counsel that he had transgressed the law—posted a disingenuous video informing his followers that, despite having just advocated for it, he did not actually support the protests.  *See* ██████████████████████  The Court should not be fooled: Debtor's self-serving attempt to sanitize his wrongful conduct after the fact is too little too late; it also is entirely insincere, as evidenced by Mr. Kwok's continued subsequent reposting of doxing and vexatious material about the Trustee, PAX, and their families and counsel, as well as the fact that during the November 21, 2022 status conference, Kwok's counsel could not represent that Kwok's improper conduct would cease.

sought permission from the Court to close her testimony to the media and not disclose her whereabouts during her virtual testimony for fear that doing so could subject her to potential harm by CCP operatives.  PAX readily consented, because it had no interest in putting Debtor's child in any type of potential danger.[87]  And for his part, Debtor's own bankruptcy filing kept his home address private out of safety concerns, listing an office instead.[88]

> **D.    The public interest is served by the issuance of an injunction.**

60.    Public interests will be served—and in no way harmed—by the grant of an injunction.  The Debtor has undertaken a sweeping campaign of online cyber harassment and abuse—including by publishing Mr. Shan's and his family's home addresses, PAX's counsel's office address, and the home addresses of the Trustee and his family members—to disrupt the orderly administration of this bankruptcy.  The public interest is disserved by permitting this online bullying and harassment to continue.  *See, e.g.*, *GTE Sylvania, Inc. v. Consumer Prod. Safety Comm'n*, 404 F. Supp. 352, 374 (D. Del. 1975) ("In sum, it is difficult to perceive how the public interest would be harmed by enjoining the disclosure of information of dubious accuracy.").  Moreover, the public has a powerful interest in seeing bankruptcy cases proceed unhindered by intimidation and attempted coercion.  Kwok's conduct has a single focus: hindering his creditors from recovering what he owes them.  PAX and the Trustee are using the bankruptcy process to lawfully recover Kwok's assets, which is anathema to him.  He is fomenting violence to thwart the legitimate operation of chapter 11 of the Bankruptcy Code.  It is manifestly in the public interest to prevent him from doing so.

---

[87] ECF 183-4 (Friedman Declaration, Ex. 26) at 65:16–66:3; 74:3–18.
[88] ECF No. 1 at 2; Friedman Decl. Ex. 2 at 51:20–24.

## **CONCLUSION**

61.     For the foregoing reasons, PAX respectfully requests that the Court issue a temporary restraining order immediately and a preliminary injunction thereafter, substantially in the form attached as Exhibit A to this motion, that restrains and enjoins the Debtor, his officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with the foregoing, from (i) posting false and harassing online materials about the chapter 11 Trustee, PAX's or PAG's officers or employees, counsel to the Trustee or PAX, and any of their respective relatives; (ii) publishing online the home addresses and other personal information of the Trustee, PAX's manager PAG's Chairman, Shan Weijian, PAX's or PAG's other officers and employees, and members of their families; and (iii) encouraging, inciting, suggesting, or directly or indirectly funding protests at the home of the Trustee, PAX's or PAG's officers or employees, counsel to the Trustee or PAX, and any of their respective relatives.  PAX also requests that the Court order Kwok to remove all existing social media posts that (i) contain personal information about the Trustee, PAX or PAG officers or employees, the Trustee, counsel to the Trustee or PAX, and any of their respective relatives; and (ii) encourage, incite, or suggest protests, harassment, doxing, or similar conduct toward the Trustee, any PAX or PAG officers or employees, counsel to the Trustee or PAX, and any of their respective relatives.

62.     Finally, in light of the apparent violations of federal law discussed above, PAX requests that the Court refer this matter to the United States Attorney for the District of Connecticut for investigation.

Dated: November 22, 2022
Hartford, Connecticut

**Pacific Alliance Asia Opportunity Fund L.P.**

By: */s/ Patrick M. Birney*
Patrick M. Birney (CT No. 19875)
Annecca H. Smith (CT No. 31148)
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8275
Facsimile: (860) 275-8299
E-mail: pbirney@rc.com
           asmith@rc.com

-and-

Peter Friedman (admitted *pro hac vice*)
Stuart M. Sarnoff (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
           ssarnoff@omm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2022, a copy of the foregoing was filed electronically through the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties receiving notice by operation of the court's electronic filing system. Parties in interest may access this filing through the Court's CM/ECF System.

<u>/s/ *Patrick M. Birney*</u>
Patrick M. Birney