**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In Re: | ) | CHAPTER 11 |
| | ) | |
| HO WAN KWOK, GENEVER | ) | CASE NO.: 22-50073 (JAM) |
| HOLDINGS CORPORATION and | ) | |
| GENEVER HOLDINGS LLC | ) | |
| | ) | |
| | ) | |
| PACIFIC ALLIANCE ASIA | ) | ADV. PRO. NO.: 22-05032 |
| OPPORTUNITY FUND L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HO WAN KWOK, | ) | DECEMBER 2, 2022 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**HO WAN KWOK'S OBJECTION TO MOTIONS FOR A PRELIMINARY
INJUNCTION AND CROSS-MOTION TO VACATE THE NOVEMBER 23, 2022
ORDER GRATING APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Ho Wan Kwok, by and through his counsel, respectfully files this objection to the motion

by Plaintiff Pacific Alliance Asia Opportunity Fund L.P. ("Plaintiff" or "PAX") for a preliminary

injunction ("PAX Motion") and the motion of Luc A. Despins, as Chapter 11 Trustee appointed

in the Chapter 11 case ( "Trustee" or "Intervenor", and together with PAX, "Movants"), to

intervene and join PAX's Motion ("Trustee Motion" and, collectively with PAX Motion, the

"Motions"), and cross-moves to vacate the temporary restraining order ("TRO") granted by this

Court against Mr. Kwok on November 23, 2022.

## I.        INTRODUCTION

Mr. Kwok is an outspoken Chinese dissident who has attracted a large following on social media through his work, over the last several years, of exposing the widespread corruption and repression of the Chinese Communist Party ("CCP") and casting aside the veil of secrecy that conceals the transgressions of China's political elite. Plaintiff PAX is an investment fund managed by a Chinese national and with extensive ties to the Chinese Communist government. Intervenor, Trustee Despins, is a partner in an international law firm with offices in China and that represents Chinese government entities.

Without shame—or, seemingly, a sense of irony—Plaintiff and Intervenor are employing the very tactics utilized by the Chinese government to suppress speech with which it disagrees[1] and to use "reasonable force"[2] against and imprison those who dare to challenge its authority.

As a threshold matter, the Complaint fails to even assert a cause of action. As there is no justiciable claim, this Court lacks jurisdiction to adjudicate this matter or any attendant motions. The Court should deny the Motions for that reason alone. In any event, Movants have not pointed to any conduct that warrants imposition of an injunction, let alone the overly broad, far-reaching restraining order issued by the Court on the night before Thanksgiving. By Movants' own admission, the protests—whether outside offices or homes—have all been peaceful. They assert that signs were held, leaflets were distributed, and, on one occasion, traffic allegedly was blocked. They do not contend, nor can they, that Mr. Kwok participated in any protests, sign-

---

[1] *See, e.g.*, Myers, Steven L. (Nov. 2, 2021). *Shutting Down Historical Debate, China Makes it a Crime to Mock Heroes*. New York Times. Available at https://www.nytimes.com/2021/11/02/world/asia/china-slander-law.html (last accessed Dec. 2, 2022).

[2] *Cf.* Trustee's Motion for Order (I) Authorizing Service of TRO by U.S. Marshal Service at 6 (ECF 34) (asking court to direct Marshals to use "reasonable force" to serve TRO on non-party protestors).

holding, or leaflet distribution. Nor have they established—or even alleged—any proof of violent activity. They downplay and brush aside the fact that on November 20—three days before the TRO was entered—Mr. Kwok in no uncertain terms publicly stated that he *opposed* the protests. Nor do they acknowledge that the Trustee's motion filed on November 18, 2022, for Rule 2004 examinations of non-party individuals who are part of the Chinese dissident movement, *sparked* the protests.

Instead, they focus on what they believe are false and defamatory statements by others—not Mr. Kwok—on social media about Plaintiff's parent's CEO and the Trustee. They allege that Mr. Kwok republished some of this speech, effectively acknowledging that Mr. Kwok did not create the social media messages. But regardless, the Supreme Court has long held that an "injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (citing *Near v. Minnesota,* 283 U.S. 697 (1931)). As the Court noted, "[i]t is elementary, of course, that in a case of this kind the courts do not concern themselves with the truth or validity of the publication." *Id*. Indeed, even where the speech is "intended to exercise a coercive impact on the respondent [that] does not remove [the speech] from the reach of the First Amendment." *Id.*

Here in the United States, Mr. Kwok, and others who support his work in exposing corruption, oppression, and violations of human rights by the Chinese government, have a constitutional right to speak freely. That Plaintiff and the Trustee are embarrassed or uncomfortable by speech critical of their actions and associations is not grounds for this Court, using the full power of government authority, to silence Mr. Kwok or others who are not even parties to this adversary proceeding.

The proposed injunction is also impermissibly vague and overbroad. It seeks to bar the posting of allegedly false and harassing materials, but there has been no adjudication that any statement is false or any guideposts for determining what is "harassing." It also enjoins Mr. Kwok from interfering in any way with the "integrity" of his Chapter 11 case – but what does that mean? Is mounting any type of defense or speaking out on what he considers to be an unfair process "interference?" Is this court filing "interference?"

The proposed injunction orders Mr. Kwok, without limitation, to remove "all existing social media posts" that contain "personal information" about the Trustee or the employees or counsel of PAX and PAG. That seemingly requires him to undertake the impossible task of removing any online post made by anyone anywhere in the world that contains such information. And what exactly is "personal" information? Middle names, schools attended, previous employment, age, marital status, level of wealth, political views? The list is seemingly endless. And why is any of that "personal" information—most, if not all, of which can be easily found on the Internet—beyond the bounds of acceptable commentary or discussion in a free society? The existing TRO is a gross overreach by this Court as would be the preliminary injunction sought by Movants.

The Court should, therefore, deny the motion or preliminary injunction in its entirety and vacate the temporary restraining order.

## II.    BACKGROUND

Movants provide various details regarding the procedural history of the bankruptcy proceeding to create a false narrative as to the cause of the protests. But Movants omit key events, precipitated by the Trustee's aggressive tactics, that caused numerous non-parties to become enraged and exercise their constitutionally protected rights to speak out and peacefully protest. As documented in PAX's motion, Mr. Kwok has been highly critical of the Trustee

throughout the summer of this year—as is his right. Mr. Kwok questioned the connections

between the Trustee's global law firm, Paul Hastings, and various Chinese state-owned

enterprises. Given Mr. Kwok's work exposing corruption and other misdeeds by the CCP, it was

only natural that he would be suspicious as to why an attorney who is a partner – a part owner –

of a 1,000-attorney firm with substantial business ties to and offices in China would be appointed

to serve as the Trustee in his bankruptcy case. Movants cite social media postings from July that

are critical of the Trustee, but it is not until November 20, 2022, as Movants note, that the

protests about which they complain occurred. Movants omit the key fact that on November 18,

2022, just two days before the protests began, the Trustee filed in the bankruptcy proceeding a

"Motion for 2004 Examination of Additional Legal and Financial Advisors to the Debtor,

Entities and Individuals Affiliated with Debtor, and Relevant Media Companies and Banks

(Second Supplemental Omnibus)." ECF 1116. Included on the list of entities that the Trustee

intended to subpoena were organizations made up of Chinese dissidents who believed the

Trustee's actions were an attack on them. *That* prompted the protests. And while Mr. Kwok

agreed that the Trustee's actions were outrageous, he did not participate in those protests and, in

fact, on November 20, issued the following statement that was disseminated on Twitter[3]:

---

[3] https://twitter.com/himawarimg/status/1594540261593710593?cxt=HHwWgoDQhe76-
KAsAAAA



**The Movants' Evidence**

Movants first allege that Mr. Kwok "reposted and pinned" on social media website Gettr, a post by the "Himalaya Global Alliance" that purportedly "originated from a Gettr account called "NFSC Speaks." The post urged protests at the home and office of the Trustee and his family members, and other lawyers and firms in the case. PAX Mot. ¶ 25. But Movants do not cite to any such posting or reposting. There is no evidence to support this bare allegation.

Movants do provide a link to a video that allegedly was posted on November 16, 2022 by "NFSC Speaks." PAX Mot. ¶ 27. But Mr. Kwok does not make any statements in that video. Movants claim that he reposted "clips" from the video, but they offer no evidence of what those clips were. Movants further assert that NFSC is an organization that Mr. Kwok "organized and is closely associated with him" but they fail to provide any evidence of Mr. Kwok's role in the organization or whether he has any control over its operations.

On November 18, 2022, the day the Trustee filed his motion to seek subpoenas of many of Mr. Kwok's supporters, Movants allege that Mr. Kwok reposted a video that allegedly was an effort to "intimidate PAX's counsel[4] and the Trustee." PAX Mot. ¶ 28. But that video does not contain any statements from Mr. Kwok and there is no evidence that Mr. Kwok created or produced the video.

Movants reference a November 19, 2022 "NFSC Speaks" post that Mr. Kwok allegedly reposted, but they provide no evidence or even a URL link to support that assertion. PAX Mot. ¶ 30. Similarly, they allege that Mr. Kwok reposted certain "NFSC posts," but they fail to identify the posts in any manner. Instead, they complain about a comment that was made to one of the posts by some unidentified third party who uses the Gettr handle, @tongwangdou. They provide no evidence of any connection between Mr. Kwok and that individual.

Movants also point to actions of certain protesters—handing out leaflets and holding signs on public property near the Trustee's residence (PAX Mot. ¶ 32 (referencing the Trustee's filing ECF 1133 in Case No. 22-br-50073))—and assert only that it is "a group of debtor-aligned protesters." Id. Again, they fail to point to any evidence that Mr. Kwok participated in or otherwise directed the protest.

Finally, Movants point to certain allegedly false statements that Mr. Kwok made in or around July 2022. PAX Mot. ¶¶ 33-39. But, at most, those statements may be the basis for a defamation claim for damages. They are not the type of evidence that supports imposition of a prior restraint on speech.

---

[4] PAX's lead counsel is O'Melveny & Myers, a 700-attorney firm with 15 worldwide offices, three of which are in China.

In sum, Movants do not identify or otherwise rely on any direct statements or actions by Mr. Kwok in seeking this extraordinary relief. Instead, they layer inference upon inference and omit key evidence to reach their unsupportable conclusion that Mr. Kwok is orchestrating the activity of others—speaking out and protesting—that are in any event constitutionally protected activities.

## III. ARGUMENT

### A. THE COURT LACKS JURISDICTION OVER THIS ADVERSARY PROCEEDING

Movants' claims for injunctive relief fail at the courthouse door. Movants have not alleged *any* causes of action, much less ones over which a bankruptcy court may exercise jurisdiction. The adversary proceeding, therefore, must be dismissed in its entirety. Movants purport to assert two claims for relief: Count I refers to 28 U.S.C. §1651(a) and Count 2 cites 11 U.S.C. § 105(a). These provisions bolster the powers given to federal courts to aid them in governance over legal proceedings, but neither statute provides for a private right of action. Movants' improper reliance upon them is fatal to their claims for relief, injunctive or otherwise. As the Court lacks subject matter jurisdiction over this matter, the proceeding must be dismissed, and all pending motions terminated. *See Rogers v. LVNV Funding, LLC*, 2022 WL 229835 at *2 (E.D.N.Y. June 24, 2022) ("Given their limited role in the judicial system established by our Constitution, federal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction and must dismiss a case—even *sua sponte*—when they find it lacking.").

Movants' reliance on federal and state criminal statutes does not cure the problem. None of the statutory provisions cited or relied upon—18 U.S.C. § 2261A(2), Conn. Gen. Stat. § 53a-183(a)(3), 18 U.S.C. § 1512(c)(2), 18 U.S.C. § 1507, 18 U.S.C. § 119, and U.S.C. § 1503(a)—

allows for a private cause of action and therefore none of these statutes support the Court's exercise of power under sections 1651(a) and 105(a). Neither PAX nor the Trustee has any rights under these criminal statutes for which the Court can exercise its powers. The most that can happen is that any alleged violations of criminal law can be referred to the relevant authorities, which apparently has already been done.

The Court's lack of jurisdiction mandates that the Court dismiss this proceeding, including the Motions.

### B.  PRIOR RESTRAINTS ON FREE SPEECH, SUCH AS THE INJUNCTION SOUGHT HERE, VIOLATE THE FIRST AMENDMENT

As the Supreme Court long ago recognized, "[I]t is the chief purpose of the guaranty [of the First Amendment] to prevent previous restraints upon publication." *Near v. Minnesota*, 283 U.S. 697, 713 (1931). There is a "heavy presumption against [the] constitutional validity" of a prior restraint, with the burden on the party seeking the prior restraint to overcome that presumption. *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam). This presumption can be overcome "only in 'exceptional cases.'" *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) ("Davis") (Blackmun, J., in chambers (quoting *Near*, 283 U.S. at 716)); *see also CBS, Inc. v. United States Dist. Court*, 729 F.2d 1174, 1183 (9th Cir. 1984) (recognizing that "prior restraints, if permissible at all, are permissible only in the most extraordinary of circumstances"). Courts must "look at the injunction as we look at a statute, and if upon its face it abridges rights guaranteed by the First Amendment, it should be struck down." *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 581 (1971).

Prior restraints are "the most serious and the least tolerable infringement on First Amendment rights" because they are "an immediate and irreversible sanction," not only "chilling" speech but also "freezing" it, at least for a time. *Nebraska Press Assn. v. Stuart*, 427

U.S. 539. 559 (1976). Time and again, the Supreme Court has rejected prior restraints, including in cases where the claimed justifications included: the Sixth Amendment rights of criminal defendants, *Stuart*, 427 U.S. at 570; the protection of confidential or proprietary business information, *Davis*, 510 U.S. at 1318; and the protection of military secrets and national security, *N.Y. Times*, 403 U.S. at 713 (rejecting a prior restraint preventing publication of the Pentagon Papers). The reasons proffered by Movants for the injunction and prior restraint they seek—*e.g.*, protection of their reputations and avoiding discomfort when facing protesters and being subjected to name-calling on social media—do not come close to the justifications that were squarely rejected in these landmark Supreme Court cases. On this basis alone, the Court must deny the motion for preliminary injunction.

The instant case is most analogous to *Keefe*, where local civil rights activists believed that Keefe's real estate sales practices were improper, so they began distributing leaflets in Keefe's hometown, including to people going to and from Keefe's church. Some leaflets even included Keefe's home phone number, and urged readers to call Keefe and express their disapproval. The leafletters would do this every few weeks and threatened to continue until Keefe stopped doing what the leafletters condemned. The Illinois courts enjoined the leafletting, but the Supreme Court reversed on First Amendment grounds. The Court concluded that even if the protesters "intended to exercise a coercive impact on the respondent [that] does not remove [the speech] from the reach of the First Amendment." 402 U.S. at 419. The Court said, "Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper." *Id*. And the Court held that "[d]esignating the conduct as an invasion of privacy . . . is not sufficient to support an injunction against peaceful distribution of [such] informational literature," when the plaintiff "is not

attempting to stop the flow of information into his own household, but to the public." *Id.* at 419-20.

The protests and leafletting here all have been peaceful and while the protesters may be intending to exercise what the Court called "a coercive impact"—*i.e.,* to pushback against the Trustee's aggressive tactics such as noticing subpoenas for many of them—that does not remove their activities and speech from First Amendment protection. Further, all of the information that had been disseminated about the Trustee and PAX was obtained from the public record—even home addresses. There has been no disclosure of private, personal information (such as Social Security numbers or medical records).

The injunction sought by Movants is particularly repugnant to the First Amendment because it is not narrowly tailored but instead significantly overbroad. For example:

- It enjoins speech on issues not necessary to accomplish the stated goal of protecting the safety of the Trustee and his family and counsel (*e.g.,* prohibits unspecified "false" materials about them);

- It enjoins the constitutional rights of an unspecified and potentially limitless group of publishers. PAX Mot. at 2 (Mr. Kwok, Genever BVI, Genever Holdings LLC, and Mr. Kwok's "officers, agents, servants, employees, and attorneys, and *other persons in active concert or participation with the foregoing*…")[5] (emphasis added); and

- The determination as to who is subject to the preliminary injunction appears to be left up to the Trustee and PAX (*e.g.,* anyone who says anything they don't like).

---

[5] By its terms, the injunction would seemingly apply to a random person who happened to be passing by a protest, agreed with what the protesters were saying, and decided to exercise her First Amendment rights and join them.

A preliminary injunction is also unnecessary. Since Movants filed their papers, Mr. Kwok has relinquished ownership of the shared Gettr account from which the challenged statements were made. He has removed posts that contained challenged statements from social media that is within his possession, custody, or control. He has not posted or reposted any information concerning the Trustee, his family, or other participants in this case. And he has no plans to, even though he has a constitutional right to do so.

### C.  MOVANTS FAIL TO MEET THE EXTRAORDINARY BURDEN OF PROOF NECESSARY TO IMPOSE AN INJUNCTION ON SPEECH AND RIGHT OF ASSEMBLY[6]

The imposition of a preliminary injunction on any type of behavior is "an extraordinary and drastic remedy never awarded as of right." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008)). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion" that:  (1) he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party. *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005). Courts must also consider whether the injunction is in the public interest. *Winter v. Nat. Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

---

[6] Mr. Kwok maintains that this proceeding and all related pending motions must be dismissed for lack of subject matter jurisdiction. Nonetheless, he proffers this objection to the Motions in compliance with this Court's December 1, 2022 order directing that any objection to the Motions be filed by Noon on December 2, 2022. In doing so, Mr. Kwok does not waive his objections to this Court's jurisdiction over the claims and his right to seek dismissal of the entire proceeding on those grounds.

For the reasons set forth below, Movants' allegations and proffered evidence do not make the required clear showing—even if, as Movants allege, their burden is nothing more than a frog's hair above fifty percent. PAX Mot. ¶ 45.

1. **Movants Fail to Make the Requisite Clear Showing That They Are Likely to Succeed on the Merits of Their Claims.**

As an initial matter, absent a valid cause of action and subject matter jurisdiction over the proceeding, there are no merits on which Movants may be likely succeed. Movants, undeterred by their lack of a valid cause of action, nonetheless allege that they are likely to succeed on the "merits" of whatever it is that they have alleged by the simple, but wrong, equation: because federal bankruptcy courts have the power to issue injunctions, and have in the past issued injunctions (albeit in very different circumstances that undermine the holdings' application here), and because they feel that Mr. Kwok is harassing them (ignoring that they present no evidence that Mr. Kwok is responsible for the alleged harassment) in a manner that may impact this proceeding (though they proffer no plausible way in which it could), Movants assert that they are likely to succeed.

Movants arguments fail for numerous reasons, not the least of which is because they rely on a misapplication of the law—that Movants have private rights under §§ 1651(a) and 105(a)— and the First Amendment. Movants claims, moreover, are nothing more than run-of-the-mill defamation masquerading as harassment and alleged interference with judicial process. As there has been no adjudication that anything is false and defamatory (nor could there be in this Court) or any that such speech was made with knowledge that it was false or reckless disregard for its truth or falsity, the Court cannot enjoin the speech of Mr. Kwok and others to redress an alleged defamation wrong, for which the only remedy is damages.

*Sections 1651(a) and 105(a) Do Not Entitle Movants to Relief*.

Movants argue that Mr. Kwok is utilizing social media in a manner that is harassing and presents a threat to the rule of law and orderly administration of this adversary proceeding, thus entitling them to relief under either § 1651(a) or § 105(a). But, as Movants admit and is discussed above in Section II, Mr. Kwok did not make most of the statements and or engage in the behavior upon which they assert a right to relief, and Movants have not provided evidence sufficient to impute them to him. Their Motions makes little of a meaningful connection between Mr. Kwok and the speakers. They simply lump all complained-of behavior together and assign it to Mr. Kwok because, allegedly, he "is closely associated" with "NFSC Speaks"[7] and supposedly exerts "considerable influence amongst his audience." PAX Mot. ¶¶ 27 and 43, respectively. Notably, the persons whose behavior forms the basis for the preliminary injunction and the TRO have themselves denied Mr. Kwok's alleged involvement with their posts and protests.[8]

Importantly, as set forth in more detail below, the conduct for which Movants complain does not rise to the level of harassment or threats that could warrant the imposition of the extraordinary and constitutionally-offensive remedy that they seek.[9] Movants assert that the very

---

[7] Mr. Kwok does not dispute that he was one of the organizers of NFSC but that fact alone is not sufficient to establish that he exerts any control today—specifically that he directs or controls the posts to NFSC's social media—sufficient to impute them to Mr. Kwok.

[8] *See, e.g.*, November 27, 2022 video from Instagram account from handle @tuding123 at https://www.instagram.com/p/CldV4s-pMfL/?hl=en (protesters stating that they are not protesting on behalf of Mr. Kwok).

[9] As previously stated, even though the information regarding family members and home addresses is all public information. Mr. Kwok never personally posted, or advocated that others post, information about the families or protest at home addresses; he is not currently doing so and he has no plans to do so. Accordingly, he is willing to enter into a stipulation stating he would not

1.  Publish online:

fact that they feel harassed by statements that may be—but most likely are not—defamatory will subvert the Trustee's and the Court's administration of this estate and PAX's ability to participate. The notion that they will cease to be able to perform their roles in this proceeding absent protection from being called "garbage lawyers" and "evil" "scumbags" is absurd, and Movants present no evidence to support it. It is, in fact, far more reasonable to assume that the statements will have no bearing on the Trustee's resolve to fiercely identify and take control of Mr. Kwok's alleged assets or PAX's determination to take its share. The Trustee and PAG's CEO have not achieved their professional success by taking offense to every slight and criticism served up by their opponents. They must, as does everyone else, suffer the slings and arrows of negative publicity or pursue the appropriate remedy at law, a claim for defamation (if it is warranted).

Movants' argument is further undermined because, as they admit, Mr. Kwok has actively taken steps to remove posts and to dissuade those actors whom Movants find "harassing." While they attempt to downplay Mr. Kwok's subsequent actions as a "self-serving attempt to sanitize his wrongful conduct" (PAX Mot. n. 86), they cannot have it both ways—that Mr. Kwok exerts influence and control to incite his organizations and followers to attack Movants, but he is not to

---

 a. home addresses, personal telephone numbers of the Trustee and his immediate family members (including known ex-spouses);

 b. Home addresses, personal telephone numbers of Shan Weijian, PAG's Chairman and his immediate family members (including known ex-spouses);

 c. Home addresses, personal telephone numbers of counsel for the Trustee, counsel for PAX, or their family members (including known ex-spouses);

2. Identify the Trustee's children and ex-wife and reference them in commentary;

3. Identify Weijian's children and spouse (and, if applicable, ex-spouse) and reference them in commentary;

4. Encourage or support protests at the homes of the Trustee, his immediate family members, Weijian, and his immediate family members, including known ex-spouses; and

5. Threaten or encourage others to threaten the safety of the Trustee, Weijian, their counsel, or their respective immediate family members (including known ex-spouses).

be credited when he advocates against the conduct that Movants seek to control. Their claim that Mr. Kwok's comments were "self-serving" is inadmissible speculation as to their adversary's motive. PAX Mot. n. 86.

Movants' legal interpretation of § 1651(a) as a catchall provision that the Court may use to enter any form of relief that it sees fit is, likewise, flawed and inconsistent with the law, including those cases relied upon in the Motions. To the contrary, the statute serves as a "procedural instrument designed to achieve the rational ends of law" by enabling courts to issue "writs that are *not otherwise covered by statute*." *In the Matter of Anthony A. Stabile and Stephen E. Saracco*, 436 F. Supp. 406, 413-14 (E.D.N.Y. 2006) (emphasis added). Here, there is an adequate remedy in the form of a common-law claim for defamation.

The cases cited by Movants stand merely for the proposition that federal courts may issue preliminary injunctions. They offer little support for the argument that the Court can and should issue a preliminary injunction *here*. That a federal court is empowered to issue preliminary injunctions is not in dispute. The conditions on which they may do so is. Movants' cases do not help them, and in fact support that §1651(a) was not designed to apply under the circumstances presented here. For example, in *Off. Comm. of Equity Sec. Holders v. Wilson Law Firm (In re Mirant Corp.)*, 334 B.R. 787, 795 (Bankr. N.D. Tex. 2005), *S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 442 (2d Cir. 1987), and *Matter of W. T. Grant Co.*, 6 B.R. at 764, 767, creditors communicated with fellow creditors for the purposes of influencing their support against a proposed settlement and reorganization plan. In each case, there was clear intent to influence the respective proceedings. The courts, moreover, deemed those communications commercial

speech,[10] which is afforded less protection by the First Amendment than ordinary speech, like the statements at issue in this case which are to be afforded the full protection of the First Amendment. *In re Mirant* additionally involved a fiduciary relationship where the speaker being enjoined, an attorney, served as the representative of the class of shareholders, thus placing on him the duty to deal fairly and honestly with members of the class and empowering the court to take additional actions to ensure that he did. Mr. Kwok is not a fiduciary; he is an individual debtor acting in his own capacity. And, in fact, the court in *In re Mirant* actually noted that it would not be able to "exercise control over the expression of opinion or purported statements of fact by a shareholder *acting in his own right*." 334 B.R. at 794 (emphasis added). Mr. Kwok who, to the extent that he made any of the statements alleged in the Complaint and Motions, did not send them to any other party, or even a potential party, creditor, or witness, was clearly acting in his own right. The complained-of statements were published to the public at large. They are neither commercial speech nor do they seek to or have any direct or indirect influence on these proceedings.

The challenged commentary in some instances exposes the relationship between Movants and the CCP and opines that the Trustee's and his firm's work on behalf of companies with known affiliation to the CCP—which the Trustee does not and cannot dispute—is part and parcel with the corruption of the CCP. This commentary originated when the Trustee was first appointed, and is undoubtedly newsworthy.[11] It bears no resemblance to the speech enjoined in cases cited by Movants, such as *In re Mirant* (enjoining solicitation materials prepared by

---

[10] Commercial speech is speech that proposes a commercial transaction. *See Central Hudson Gas & Elec. v. Public Svc. Comm'n*, 447 U.S. 557, 562 (1980).

[11] *See, e.g.*, https://news.bloomberglaw.com/bankruptcy-law/chinese-exile-guo-says-bankruptcy-trustee-is-conflicted.

attorney and class representative to shareholders seeking to persuade them to reject the proposed

Chapter 11 plan and which the court determined contained numerous false and misleading

statements), *Am. Bd. of Trade* (enjoining bulletins sent directly to creditors misleading them as to

the financial condition of debtor), or *W.T. Grant* (enjoining written communications from

dissenting debentureholder directly to other debentureholders seeking to influence their support

in settlement negotiations).[12] Other cases relied upon by Movants are also distinguishable. *In re

Stabile*, 436 F. Supp. 2d 406, 415 (E.D.N.Y. 2006), involved direct communication with the

court-appointed monitor, and *Houghtaling v. Eaton*, 559 F. Supp. 3d 164, 172 (W.D.N.Y. 2021),

concerned frivolous court filings by a *pro se* litigant—which the court *declined* to enjoin.[13]

Neither provides support for the relief sought here. It is not surprising that Movants are unable to

cite a single case that is directly on point—civil litigants are simply not permitted to obtain

restraints on speech without first establishing that the speech runs afoul of the First Amendment.

<u>*Movants are Not Likely to Succeed on Their True Claim: Defamation*</u>.

Despite what they choose to call it, the Motions plainly seek a remedy for statements that

Movants believe to be false and defamatory. They may not do so. Nor would this Court have

jurisdiction over a claim for defamation, if one could be brought. Defamation is a common-law

claim that is beyond the jurisdiction of this bankruptcy court. *Stern v. Marshall*, 564 U.S. 462

---

[12] *In re Fustolo*, 2015 WL 411760 (Bankr. D. Mass. Jan. 30, 2015), an unreported Massachusetts case relied upon by Movants despite that it is not binding on this Court, is also inapposite as plaintiffs there relied upon a valid cause of action that may have entitled them to relief. Movants do not. *Fustolo*, notably, and ironically, was reversed for lack of jurisdiction, the same issue faced here. *See* PAX Mot. n. 81.

[13] Movants likewise cite to *Century Indemn. Co. v. Kosnoff*, and rely on its holding for nearly two pages of the PAX Motion. The holding, which is not binding on this court, is, as noted in the transcript, under seal. PAX's counsel, who served as counsel to Century Indemnity in the matter, appears to be relying on personal knowledge and documents in the matter to assert its relevance here. As neither Mr. Kwok nor the Court can meaningfully review the holding, it must be disregarded for the purposes of resolving the Motions.

(2011) (holding that the bankruptcy court lacked constitutional authority to enter a final judgment on a defamation claim); *see also* 28 U.S.C. § 157 (b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.") (relied on by Movants, PAX Mot. ¶ 5).

Moreover, a defamation claim by Movants brought in this court would be highly unlikely to succeed on the merits. A claim for defamation typically requires a plaintiff to show: (1) a false and defamatory statement about the plaintiff, (2) published to a third party without privilege or authorization, (3) with fault of at least negligence,[14] and (4) special damages or per se actionability. *See, e.g., Celle v. Filipino Reporter Ent., Inc.*, 209 F.3d 163 (2d Cir. 2000). To succeed on a claim, the plaintiff bears the burden of proving that the statements are false. *See, e.g., Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019) ("Despite the truth often being framed as a defense to libel, the burden of proving the falsity of a statement rests with the plaintiff."). Statements of opinion and hyperbole are non-actionable, protected speech. *Mann v. Abel*, 10 N.Y. 3d 271, 276 (2008) ("Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation.").

Movants seek injunctive relief because Mr. Kwok allegedly published, or is allegedly responsible for publishing, statements calling them, among other things, "spies," "thieves," "scumbags," and "garbage lawyers," and accusing them of funneling money to and deriving

---

[14] In the case of public officials and public figures, like Movants, they would need to prove that the statements were made with actual malice—that is, with knowledge or falsity or reckless disregard for the truth or falsity. *New York Times Co. v Sullivan,* 376 U.S. 254 (1964).

income from entities affiliated with the CCP, which, in turn, uses its resources to persecute the Chinese people. PAX Mot. ¶¶ 33-38. These statements are unflattering, but no interpretation of the law supports infringing on the freedom of speech to protect a party from name-calling and bad publicity. And, as noted above, Movants do not deny that they provide legal and financial resources to entities affiliated with the Chinese government, and that Movants get paid for that work. That the CCP uses its money and resources to oppress opponents of its power is also not in dispute. Movants claim that drawing the connection that the two are related is defamatory, but these statements are classic examples of protected opinion.

Movants are not entitled to an end-run the judicial process governing defamation claims. Absent adjudication of the alleged falsity and defamatory nature of the commentary, the speech at issue may not be restrained.

Movants cannot succeed on the merits of any underlying claim.

### 2. Movants Fail to Make the Requisite Clear Showing That They Are Likely to Suffer Irreparable Harm.

It is well-established in this Circuit that "[a] showing of irreparable harm is the *single most important* prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtex Corp.*, 559 F.3d 110, 1189 (2d Cir. 2000) (emphasis added) (citing *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "On a motion for preliminary injunction, 'irreparable injury' is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir .2011) (citing *Tom Doherty Assocs. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir.1995) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)). In the absence of evidence that the party seeking an injunction will be irreparably harmed unless the injunctive relief is granted, the application must be denied. *See*

*Faiveley*, 559 F3d at 119-120 (vacating preliminary injunction where both plaintiff and district court failed to point to any evidentiary support for conclusion that plaintiff would be irreparably harmed unless defendant was enjoined and speculation was not an appropriate basis for entry of a preliminary injunction).

Movants allege that (i) they will continue to fear for their physical safety and potentially suffer physical harm; (ii) that the statements may interference with the Trustee's focus and ability to pursue estate assets; and (iii) that the statements will scare away other whistleblowers and witnesses that might seek to assist the Trustee. None of these alleged harms constitutes "irreparable harm."

Movants take significant pains to trump up the alleged egregiousness of the commentary about them and the potential repercussions, labeling it "outrageous baseless and vexatious attacks" and "online bullying and smear campaigns" that are "maligning, defaming, doxing, and harassing" Movants. PAX Mot. ¶¶ 1 and 27. And all this, allegedly, was masterminded and carried out by Mr. Kwok. But none of this constitutes irreparable harm. If it did, there would be no end to the number of injunctions that courts would be issuing daily for the commentary prominent and even ordinary individuals endure. Indeed, the *only* legal remedy for allegedly false and defamatory statements that may inflict emotional distress is monetary damages.

The November 16, 2022 video, for example, is a thirty-six-minute video that investigates and exposes PAX and the Trustee's relationships with the CCP. The speakers present facts from public records including prominent news outlets and Paul Hastings's own website, and draw conclusions based on those disclosed facts.[15] Other statements that Movants challenge include

---

[15] In its closing minutes the video urges protests and repeatedly makes clear that the urged protests are to be peaceful.

that they are "spies," "thieves," "scumbags," and "garbage lawyers," and are funneling money to and deriving income from the CCP, which in turn uses its resources to persecute the Chinese people. PAX Mot. ¶ 33-38. Even if Movants could somehow show that Mr. Kwok is responsible for the video and the statements—which they cannot—this is not comparable to the irreparable harm suffered by those in the cases relied upon by the Movants. *See Doe v. Ct. Dep't of Public Safety* (being listed on a public sex offender website without due process), *Jolly v. Coughlin* (being solitarily confined for refusing to submit to a tuberculosis test), and *Shapiro v. Cadman Towners, Inc.* (tenant being denied a parking spot despite having multiple sclerosis and being at risk of falling and serious injury).

PAX and the Trustee may, understandably, wish that these statements were not made public, and that the nature of their business affairs were left private, but they are not entitled to the extraordinary relief of enjoining the freedom of speech of not only Mr. Kwok but numerous others to shield themselves from hurt feelings and public backlash for undisputed connections to the Chinese government. Movants have not met their burden to show that they, or their family or counsel, are likely to suffer irreparable harm if the Court does not grant the preliminary injunction.

Nor, as Movants assert, is there irreparable harm because the commentary at issue allegedly threatens to undermine the judicial process in this case. Movants suggest that they cannot carry out their roles as trustee and creditor in the face of public criticism and protests. If anything, that says more about their competence and whether they belong in these roles than anything else. Protests happen every day and yet others are able to conduct their affairs. Public officials are under constant criticism and scrutiny, and yet they are able to conduct their affairs. Ironically, it was the Trustee's own actions in the case—seeking to serve subpoenas on non-

parties involved in the Chinese dissident movement—that prompted the protests. To the extent the judicial process is purportedly being "undermined" and irreparably harmed, it is the Trustee's own doing.

Finally, Movants have constantly attacked Mr. Kwok and accused him of improper conduct, which is also defamatory. Their most recent filings—including the Motion for Contempt filed on November 30—accuse Mr. Kwok of repeatedly violating the TRO when they have no evidence that Mr. Kwok was personally responsible for any of the posts or conduct over which they complain. They make these accusations without evidence. The Trustee on Wednesday informed counsel for Mr. Kwok that he had been served with a subpoena to testify at the hearing on Friday. That was false. As confirmed by the Trustee's counsel when challenged on that assertion, service had been attempted but it was never effectuated on Mr. Kwok. To the extent there is any harm in the judicial process, it is the Trustee's own doing.

In sum, Movants have not shown that either they or the administration of the estate are likely to suffer irreparable injury absent a preliminary injunction.

### 3. Movants Fail to Make the Requisite Clear Showing That the Balance of Hardships Tips in Their Favor.

After a plaintiff has made a clear showing both that it is likely to succeed on the merits, and that irreparable harm is likely to occur unless injunctive relief is granted, it must show that the balance of equities (or hardships) tips in its favor. *Winter*, 555 U.S. at 26. That is, "as compared to the hardship suffered by the other party if the preliminary injunction is granted, the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a real hardship, such as being driven out of business before a trial could be held." *Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 201 (N.D.N.Y. 2020). More than a general balance, the hardships must tip "decidedly" in favor

of the party requesting relief. *Citigroup Global Markets, Inc. v. VCG Special Opp. Master Fund Ltd.*, 598 F.3 30, 35 (2d Cir. 2010).

The Motions allege that the balance of hardships tips in Movants' favor because "Debtor will suffer no hardship if the injunction is granted." PAX Mot. ¶ 58. Movants are dead wrong. As discussed above, freedom of speech under the First Amendment is not a throwaway, it is a core American value. Every minute that one is enjoined from speaking is an infringement of First Amendment rights. Infringing those rights in even a small way is intolerable. The injunction, if granted, would not just infringe upon Mr. Kwok's First Amendment rights, but the rights of untold others. Mr. Kwok is a leading whistleblower against the CCP. Silencing him from speaking on those issues is the definition of harm. Damage would be guaranteed.

While Mr. Kwok undoubtedly will suffer hardship, the imposition of an injunction will not necessarily lessen any alleged hardship for Movants. Neither the Court nor Mr. Kwok can control everyone in the world. Others can make the same statements about the Trustee and PAX upon which they complain regardless of what this Court does. The Court also may not credit the speculative claims by Movants of alleged harm—it must rely on specific evidence. *See Winter*, 555 U.S. 7 (affirming rejection of preliminary injunction where lower court failed to rely on specific evidence presented on impact to enjoined in favor of speculative concerns raised by plaintiffs).

### 4.  Movants Fail to Make the Requisite Clear Showing That the Public Interest Will Not be Disserved by the Issuance of an Injunction.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Here, it is undoubtedly in the public interest for this Court to respect the First Amendment and not restrain freedom of speech. This is especially true where the party being restrained is a

Chinese dissident who had to flee China and seek sanctuary in the United States due to the Chinese government's attempts to punish him for his speech.

An injunction may provide Movants with leverage in this proceeding against Mr. Kwok, but that is not a public interest—at least not in America. Indeed, the main interests served by the injunction are the private interests for the Movants to be free from possibly annoying protests and references to their connections with the Chinese government.

### D.  CROSS MOTION TO VACATE TEMPORARY RESTRAINING ORDER

For all of the reasons discussed above, incorporated herein by reference, the Court should vacate the Temporary Restraining order entered at 6:00 p.m. on November 23, 2022. The standards for a restraining order and preliminary injunction are identical. The Court lacks jurisdiction to entertain the motion, Movants have not met their burden for obtaining such an extraordinary remedy, and the TRO, as entered, is impermissibly overbroad. Accordingly, the Court should vacate the TRO immediately.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Kwok respectfully requests that the Court deny the Movants' request for a preliminary injunction and vacate the temporary restraining order issued on November 23, 2022. In light of Movants' failure to state a cause of action, the Court should dismiss the entire adversary proceeding.

**DEFENDANT**
**HO WAN KWOK**

By:    /s/ *Jeffrey Hellman*
Jeffrey Hellman
Law Offices of Jeffrey Hellman, LLC
195 Church Street, 10th Floor
Tel.: 203-691-8762
Fax: 203-832-4401
New Haven, CT 06510
jeff@jeffhellmanlaw.com
Federal Bar No.: ct04102

/s/ *David Wachen*
David Wachen (*pro hac vice*)
Wachen LLC
11605 Montague Court
Potomac, MD 20854
Tel.: 240-292-9121
Fax: 301-259-3846
david@wachenlaw.com