```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF CONNECTICUT
                        BRIDGEPORT DIVISION

In Re                          *   Case No. 22-50073 (JAM)
                               *
HO WAN KWOK and GENEVER        *
 HOLDINGS CORPORATION,         *
                               *
              Debtor.          *

PACIFIC ALLIANCE ASIA              Adv. Proc. No. 22-05032
 OPPORTUNITY FUND LP,          *
                               *   Bridgeport, Connecticut
              Plaintiff,       *   January 13, 2022
                               *
     v.                        *
                               *
HO WAN KWOK,                   *
                               *
              Defendant.       *
                               *
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

                 TRANSCRIPT OF STATUS CONFERENCE
              BEFORE THE HONORABLE JULIE A. MANNING
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Plaintiff:             PETER FRIEDMAN, ESQ.
                               STUART SARNOFF, ESQ.
                               MIA GONZALEZ, ESQ.
                               DANIEL CANTOR, ESQ.
                               O'Melveny & Myers LLP
                               Times Square Tower
                               7 Times Square
                               New York, NY  10036

                               PATRICK M. BIRNEY, ESQ.
                               Robinson & Cole LLP
                               280 Trumbull Street
                               Hartford, CT  06103


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES:  (Cont'd.)

For the Chapter 11 Trustee:     NICHOLAS BASSETT, ESQ.
                                Paul Hastings LLP
                                200 Park Avenue
                                New York, NY  10166

Chapter 11 Trustee:             LUC A. DESPINS, ESQ.
                                Paul Hastings LLP
                                200 Park Avenue
                                New York, NY  10166

For the Defendant:              DAVID S. WACHEN, ESQ.
                                Wachen LLC
                                11605 Montague Court
                                Potomac, MD  20854

1          (Proceedings commenced at 10:29 a.m.)

2          THE COURTROOM DEPUTY: Case no. 22-5032, Pacific

3    Alliance Asia Opportunity Fund LP vs. Ho Wan Kwok.

4          THE COURT:  Okay.  Good morning.

5          If we could have appearances for the Chapter 11

6    trustee and the plaintiff, PAX, please.

7          MR. DESPINS:  Good morning, Your Honor.  Luc

8    Despins, Chapter 11 Trustee.

9          MR. BASSETT:  Good morning, Your Honor.  Nick

10   Bassett, from Paul Hastings, on behalf of the Chapter 11

11   trustee.

12         THE COURT:  Good morning.

13         MR. LINSEY:  Good morning, Your Honor.  Patrick

14   Linsey, Connecticut counsel for the trustee.  I apologize.

15   We're having screen issues.  You should be able to see me in

16   a moment.

17         THE COURT:  Good morning.  And for PAX.

18         MR. FRIEDMAN:  Good morning, Your Honor.  It's

19   Peter Friedman from O'Melveny.

20         MR. SARNOFF:  Good morning, Your Honor.  It's

21   Stuart Sarnoff, O'Melveny.

22         MR. CANTOR:   Good morning, Your Honor.  Daniel

23   Cantor from O'Melveny.

24         MS. GONZALEZ:  Mia Gonzalez from O'Melveny.

25         MS. SMITH: Good morning, Your Honor.  Annecca

1    Smith, Robinson and Cole, Connecticut counsel for PAX.

2              THE COURT:  Good morning.

3              And then counsel for the defendant?  Oh, Mr.

4    Wachen, there you are.  I didn't see you at first.  Sorry.

5    Go right ahead.

6              MR. WACHEN:  Thank you, Your Honor.  Good morning.

7    David Wachen, Wachen, LLC, on behalf of Mr. Kwok.  And just

8    thank you for accommodating my schedule to all who did.  And

9    Mr. Hellman, unfortunately, cannot join us because he is on

10   an airplane right now.

11             My wife would be very happy if we could -- if I

12   could be done by 10:15 by I do have a hard stop probably at

13   10:25.

14             THE COURT:  I think we'll be done by 10:15, but

15   thank you.

16             MR. WACHEN:  Thank you, Your Honor.

17             THE COURT:  Okay. All right.  So I scheduled this

18   status conference this morning in connection with the

19   preliminary injunction decision entered the other night and

20   the actual preliminary injunction order.

21             The reason that I scheduled this status conference

22   -- there's a few,but the most important of which is I have

23   obviously no idea what the parties are going to do.

24             And I hope that I made it clear in the memorandum

25   of decision that I think these issues are very serious and

1   implicate a lot of very important issues, including the

2   integrity of the bankruptcy court and the defendant's First

3   Amendment rights under the Constitution.

4           I obviously -- if you have all read it, indicated

5   that someone could -- a reviewing court could find that this

6   court didn't have jurisdiction to enter that order because

7   of the *Stern* issues and because of the wellness issues,

8   quite frankly and, therefore, a reviewing court might

9   determine that the facts -- findings of facts and

10  conclusions of law in the memorandum of decision are just

11  proposed findings of facts and conclusions of law, which

12  would have to be reviewed by a reviewing court.

13          In connection with those issues -- and I also -- I

14  believe I stated in that memorandum of decision that I

15  thought that the parties and all the witnesses presented

16  their evidence fairly, thoroughly, professionally and

17  respectfully, and I appreciate that, given the very serious

18  nature of the claims and the defenses in the adversary

19  proceeding.

20          With regard to those issues, I have a few

21  questions and possibly some things that I need you to do.

22  But I wanted to have this conference to first discuss the

23  issues and then we'll see where we -- I'd like to hear from

24  the parties on these issues and then see what next steps we

25  will take.

1        So as you all know, the issuance of the

2   preliminary injunction dissolved the temporary restraining

3   order but United States District Court Judge Dooley entered

4   two orders finding that the appeals of the temporary

5   restraining order and the mandamus issues were not -- could

6   not -- were interlocutory and she denied leave to appeal

7   those issues.

8        With regard to the preliminary injunction motion

9   and decision, there's an argument that can be made either

10  way, in my opinion, but you all can tell me that I'm wrong,

11  which is absolutely fine, that it's an interlocutory order

12  and can't be immediately appealed, or even though it is an

13  interlocutory order, it can be immediately appealed.

14       The reason I raise these issues with you and want

15  to hear from you on these issues is because of the changes

16  to the statutes made as part of the 2005 amendments and the

17  direct appeal to the circuit, a possibility that exists now

18  under the statute.

19       And as you probably all know, if you consent to go

20  directly to the circuit, I don't need to do anything.  You

21  can consent to that after filing a notice of appeal and you

22  can see whether or not the Second Circuit would take these

23  issues.

24       I do think that there are questions of law that a

25  reviewing court could and you may believe should answer in

1    order to advance the progress of this adversary proceeding

2    and possibly the case as a whole.

3              And I think those are -- it's set forth in the

4    memorandum of decision, which are the issues about the 105

5    injunction basis and standard, the 105 application to the

6    facts of this case, the defendant's First Amendment rights

7    and the bankruptcy court's ability to issue a ruling on that

8    under Article 1 power, as opposed to Article 3 power.  And

9    then the last -- you know, the integrity of the bankruptcy

10   court system.

11             So I am going to ask you all, first of all, if you

12   have any comments or responses to what I've just said. I

13   obviously -- well, it's not -- it may not be obvious, but

14   the statute says that a bankruptcy court can sua sponte

15   certify questions of law to the circuit.

16             Obviously, the circuit doesn't have to take the --

17   doesn't have to agree to decide them, but I would have to

18   write something to do that.  But I also don't have to do

19   anything if the parties are intending on doing something.

20             So I will start with the plaintiffs.  I don't know

21   if you had an opportunity to think about any of these

22   issues, but I'd like to know if you have and what your

23   position is with regard to these issues.

24             MR. DESPINS:  The principal plaintiff is PAX.

25             MR. FRIEDMAN:  Your Honor, it's Peter Friedman.

1    You know, look, I have not -- I have not thought about it

2    yet.  So I obviously want to consult with co-plaintiff and

3    my co-counsel, you know, I certainly have been involved in

4    cases that went in front of Judge Gonzalez that went

5    directly to the Second Circuit.

6           But I also have been involved in cases of very

7    momentive stakes that have gone through the normal process.

8    So I don't think that there's an obvious answer either way.

9           I think the opinion, is lengthy, thoughtful based

10   on extensive findings of fact in many parts and I'd

11   certainly think that district courts handle, as Judge

12   McMahon did in 105 issues and other issues of significant

13   bankruptcy interpretation.

14          So it's not an issue that screams out to me must

15   go to the Second Circuit immediately, but I would just want

16   to review in more detail with my team before -- and

17   plaintiff's co-counsel before (indiscernible) a further

18   answer other than to say it does not scream out to me that

19   this is an issue that must go to the Second Circuit

20   immediately without intervening your review.

21          THE COURT:  Okay.  Thank you.  Trustee Despins.

22          MR. DESPINS:  Your Honor, I would just repeat what

23   Mr. Friedman just said. I'm thinking -- you raise all sorts

24   of issues that are challenging, so I need to sort of think

25   this through. I'm sorry I don't have an immediate answer for

1    you.

2              THE COURT:  That's fine.  I didn't expect

3    everyone, by the way, to have an immediate answer.

4              That's one of the reasons why we're having this

5    status conference, right, to discuss the issues.

6              So that's fine.  Thank you.

7              Mr. Wachen.

8              MR. WACHEN:  Thank you, Your Honor.

9              I do think there are a lot of important issues

10   that have been raised by your ruling and, quite frankly,

11   we're very troubled by them.  We do intend to appeal, which

12   is probably not a surprise to anyone here.

13             I would say I'm sort of in a similar boat with Mr.

14   Friedman and Mr. Despins in some respects, that I would like

15   to talk to my colleagues who are all scattered at the moment

16   and my bankruptcy counsel's not even on the call so I don't

17   have him either.

18             So I think it's something that we need to talk

19   about, whether -- I see advantages to going straight to the

20   Second Circuit, given the issues here and if this were a

21   district court decision, we would have an appeal of right to

22   the circuit court, which is sort of a strange anomaly here,

23   I think.  But I think it's something that we're still

24   talking about and probably would need to get back to Your

25   Honor about.

1         THE COURT:  And that's absolutely fine. I mean, as

2    I said, that's one of the bases -- one of the reasons for

3    scheduling a status conference, to discuss these issues and

4    to see where the parties stand on that.

5         I'd still like to know though, because I need to

6    figure out whether there's something I need to do with

7    regard to this decision.

8         So what are your parties' thoughts on when you

9    might have an idea of how you're going to proceed?  I mean,

10   Mr. Wachen has just stated, and no one is surprised, that

11   he's going to file a notice of appeal.  So that's going to

12   be done within the next 14 days.

13        So we need to figure out how long it is -- I'd

14   like to know what the parties' positions are regarding this

15   issue.  So what time frame -- are we talking by the end of

16   next week again?

17        MR. FRIEDMAN:  Your Honor, I can say affirmatively

18   that we would not -- we would not affirmatively seek Second

19   Circuit review. I know that.  Direct review.

20        So I think just to discuss on the table -- if Mr.

21   Wachen intends to do, he should let us know and we will

22   respond properly to him once he let's us know and we will

23   then get back to the court after we've had a chance to

24   confer with him.  To me that seems like the -- one way to

25   go.  Whenever he and his colleagues have had a chance to

1    decide, if they want to let us know and ask whether we agree

2    or not, we will respond properly.

3              MR. DESPINS:  Your Honor, I'm sure that by Tuesday

4    afternoon we should be in a position to -- I shouldn't speak

5    for Mr. Wachen, but I think we should be in a position to

6    come back to Your Honor to a response to your questions.

7              THE COURT:  Well, we have a hearing on Tuesday

8    afternoon on a matter that I've been told there might be

9    some resolution on, but I don't know if that's true before

10   Tuesday afternoon.

11             So I suppose we can just keep Tuesday afternoon

12   open and see whether or not -- I mean, do the parties want

13   me to continue this status conference to Tuesday afternoon

14   or later, or at all?

15             MR. WACHEN:  Your Honor, Monday's a holiday and

16   maybe not for a lot of us on the call, but I'm sure for the

17   court, and for some people.

18             And so I'm just wondering if Tuesday afternoon --

19   I mean, obviously, we have an interest in trying to come up

20   with an answer to this, at least with respect to our

21   position as soon as possible.

22             And I think it would make sense for us to confer

23   with Mr. -- PAX's counsel and the trustee and/or his counsel

24   to see if we can reach some kind of an agreement before we

25   come back to the court.

1          And I do think it should be some time next week

2     that we come back to the court.  Whether Tuesday afternoon

3     is too soon -- you know, maybe Wednesday would make more

4     sense but, again, I'm amenable to whatever the court would

5     like to do.

6          THE COURT:  Wednesday is fine with me but also, if

7     you don't have a response, you don't have a response. I just

8     want to -- I just need to understand either way what the

9     parties' intentions are, because the court has to determine

10    whether or not there's something that the court should do,

11    right?  So that's the point.

12         MR. WACHEN:  Your Honor, could we contact the

13    court sometime Tuesday, maybe in the morning --

14         THE COURT:  Sure.

15         MR. WACHEN:  -- to let you know where the parties

16    are and then perhaps proceed that way?

17         THE COURT:  That would be fine. So I'm not going

18    to schedule -- I will not schedule another status conference

19    at this time then. I'll just wait -- we'll wait to hear from

20    the parties and, you know, obviously, you all have whatever

21    your rights are.

22         So I was just curious as to how, if at all, you

23    were going to proceed with this issue.  That's what I --

24    that's what my question is, okay?  You do whatever it is you

25    think it is appropriate. I just need to know so that --

1    because as you all know, there's -- I don't know.  Many,

2    many other matters pending in the main case that I need to

3    address as well and in other adversary proceedings.

4             So I have to kind of make sure I'm thinking about

5    all the issues that I need to address and this is obviously

6    a very important issue that impacts this adversary and also

7    the main case. So that's why I scheduled the status

8    conference.

9             But that's fine.  So we'll just wait to hear from

10   you on these issues, unless anybody else has anything else

11   they want to say.

12            MR. DESPINS:  Yes, Your Honor, if I may.

13            And this is not to suggest any substantive changes

14   to your rulings and all that, but there were technical

15   issues that were brought to our attention.

16            On this one I'll give kudos to the Chief of Police

17   of Larchmont who pointed that that in paragraph 1(c) there's

18   a discrepancy between -- it says 3:00 p.m., then open paren

19   1600 hours, which should have been 1500 hours, I think.

20            THE COURT:  Okay.

21            MR. DESPINS:  And so we want to point out -- there

22   are things like that that again, I don't want to be

23   presumptuous, but I'm sure the court intended --

24            THE COURT:  No, point them out. I'm sure the --

25            MR. DESPINS:  Okay.

1          THE COURT:  You know, if there's a mistake, please

2    point them out and we can, you know, we can correct that.

3          MR. DESPINS:  So that's the first one which is

4    that it should be 1500 hours, not 1600 hours.

5          And then in the opinion, Your Honor, I think

6    there's something like -- that we shall refer to a ghost.

7    On page 49 you say, this court enjoins picketing and

8    parading within a hundred feet during the likely hours of

9    ingress and egress, blah, blah, blah.  Then the next

10   sentence says -- and there's a footnote that says the court

11   shows -- chooses 100 feet because it concludes most

12   pedestrian traffic, et cetera, et cetera, but then the next

13   sentence says, the court concludes that this 36 foot access

14   corridor modeled after similar corridors in abortion cases,

15   et cetera, et cetera.

16         I think that there's a -- I think Your Honor

17   intended a hundred feet, because it's repeated twice, and

18   that 36 feet was probably in a prior draft or something like

19   that.  But I just wanted to point it out, because that 36

20   feet migrated to the order itself in paragraph E.

21         So, again, we're not trying -- if that's what you

22   intended, I'm sorry to raise the issue, but I think based on

23   the text it doesn't look like that was -- that's what was

24   intended.

25         THE COURT:  Well, there are two different issues

1    there.  So I'll take a look at it, okay?  I'll go back and

2    take a look at it.

3         MR. DESPINS:  And then again it's still purely

4    administrative.

5         Some of these assets, the definition of offices or

6    workplace be -- include universities or places of education,

7    because I think one of the targets is a university or

8    college, or something like that.

9         So if that could be -- I don't think that's

10   controversial. I'm sure Mr. Wachen would find that

11   controversial, but if that could be clarified, I think that

12   would be great from the perspective of that person.

13        And I'm looking at my notes here. And maybe at my

14   colleagues at O'Melveny can jump in if I'm missing things.

15        Yes, the next issue is, you know, we still have

16   the pending motion to allow the marshals to serve, which we

17   believe is the really only practical way to make this

18   enforceable, Your Honor.

19        Because if we serve privately, the (indiscernible)

20   will just tell us to take a hike. You know, they won't do

21   that with the U.S. Marshals.

22        My understanding is that if directed by the court

23   in a separate order, that the U.S. Marshal would be prepared

24   to do that, but he needs to be specifically directed to do

25   so.

1       And I think that U.S. Marshals serve orders of the

2    court of this nature -- I've done this in other cases and we

3    believe that that should happen in this case as well, given

4    the multiple parties involved throughout the country and the

5    fact that, you know, yesterday, just to be clear, they --

6    the protestors were flaunting the order, basically showing

7    online the order in front of my ex-wife's house, within ten

8    feet of her house, saying the order is not enforceable, one,

9    because the bankruptcy court only has jurisdiction in

10    Connecticut, which we know is not the case.

11       And two, because they, the protestors, were not

12    themselves named in the lawsuit.  And we know that that's

13    not right because they're acting in active concert with the

14    debtor.

15       So we need to have this enforced and served by the

16    U.S. Marshals. And so we would -- and there was a motion

17    pending to that effect that we had tabled, but we would like

18    to reactivate that motion because that's important to the

19    enforcement of the order.

20       So I'll ask my colleagues and O'Melveny if I'd

21    forgotten any technical issues, so please raise it, because

22    on my list this is what I have.

23       MR. SARNOFF:  Only, Your Honor, that with respect

24    to reintroducing the motion with respect to serve by the

25    marshals, if Your Honor would prefer -- if you would

1   entertain that, if you would prefer that we provide a new

2   proposed order to sort of update the current status from the

3   TRO.  We would be happy and ready to do that promptly.

4           THE COURT:  Well, I have to look back at it. I

5   haven't obviously looked at it for a while, so I'll have to

6   look back at the motion.

7           MR. WACHEN:  And, Your Honor, we would like the

8   opportunity to -- if that's going to be considered again to

9   have the opportunity to respond, given the updated

10  circumstances.

11          I'm not sure what Mr. Despins was referring with

12  the universities or places of education.  Maybe it's

13  something that came up in the hearing that I forgot about,

14  but I'm happy to talk with them about that.

15          And the issue of who this applies to is one of the

16  many troubling aspects of this order. If somebody reads

17  about this online, that the court entered an order and

18  (indiscernible)  and protests (indiscernible)  never met Mr.

19  Kwok and haven't even been following this case, are they

20  acting in concert?

21          I mean, I don't think it's obvious, certainly not

22  to me, that anybody who supports Mr. Kwok is acting in

23  concert with him, because that could be many -- millions of

24  people.

25          And I don't want to -- we have our own issues with

1    the order and I'm happy to -- I wasn't really prepared to

2    address this here because I wasn't sure what the purpose of

3    today's hearing was.

4            But on the issue of who are relatives of employees

5    of thousand lawyer law firms that our client or our client's

6    supporters can't protest in front of, I mean, they can be

7    standing 200 feet from Mr. Despins house and not realize

8    that they're in front of the house of any employee of Mr.

9    Friedman's firm.

10           I mean, unless they're going to tell us who all

11   the people are, who all their relative are, who all their

12   ex-spouses are, I mean, it sort of -- how do we even know

13   who we're not allow to protest in front of.

14           I mean, that's one of the many troubling aspects,

15   but I'm happy to talk with them.  We have not had any

16   communication since the order mainly because it was only

17   entered two days ago or a day and a half ago.

18           But I'm happy to talk with them and try to talk

19   about some of these practical issues, or aspects and see if

20   we can address any of them.

21           And if not, then I guess Your Honor would

22   (indiscernible).

23           THE COURT:  Okay.  Anything further?

24           MR. DESPINS:  I would say, Your Honor, that they

25   know who they are.  They have the flag of that new state --

1    the new federal state of China that they're waiving.  They

2    have not been just showing up there.  This is all organized.

3    They know what they're doing.  So there's no issue that

4    they're acting in concert.

5          But anyway -- so, yeah, Your Honor, so, again,

6    just to repeat, the issues that I think are typographical in

7    nature are the 1600 hours vs. 1500 hours and the 36 feet.

8    Based on the opinion, it appears that the court meant 100

9    feet and similarly we would ask that that be modified in an

10   amended decision in an amended order.

11         Thank you, Your Honor.

12         MR. WACHEN:  And, Your Honor, I guess I agree

13   there's that discrepancy in paragraph 1(c), but it's not

14   clear to me whether Your Honor meant 3:00 p.m. or 4:00 p.m.

15   1600 is 4:00 p.m.  And I guess the order and the opinion

16   speak for themselves, but to the extent there are

17   discrepancies I agree that it would be helpful to have those

18   clarified.

19         THE COURT:  I will go back and look at it today

20   and we'll make corrections, if they're -- we'll make

21   corrections.

22         MR. DESPINS:  Thank you, Your Honor. I think Mr.

23   Bassett had an issue that he was going to raise.

24         MR. BASSETT:  Sure.  Your Honor, this is a

25   unrelated issue and I'll be very brief.

1    But I wanted to give the court an update on

2    something that was discussed at a prior hearing.

3         As you may recall -- I don't have the exact date,

4    but I believe it was the last hearing in front of Your Honor

5    there was a discussion about Mr. Kwok's counsel accepting

6    service of a deposition subpoena in connection with the

7    adversary proceeding in the H.K. USA case.

8         I just wanted to report to the court that his

9    counsel has agreed to accept service, so we resolved that

10   part of the issue.

11        However, we are still having difficulty setting a

12   date for that deposition.  We had noticed there'd be a

13   subpoena for the 17th.  We're now told that the witness is

14   not available and we're running out of time.

15        I'm just raising that because it's an issue that

16   we may need to bring back to the court in short order on an

17   emergency basis.

18        I just wanted you to have that update.  And I

19   guess I'm now just realizing that Zeisler's not on this

20   call, so I won't belabor it further. I just wanted to let

21   the court know of that status update.

22        THE COURT:  Okay.  Thank you.

23        MR. DESPINS:  And Your Honor, just one point of

24   clarification.

25        At the beginning you said that the district court

1    had ruled that some orders were interlocutory.  I know that

2    there's a ruling on the asylum application that said that,

3    but I was not aware of other orders -- so there was another

4    order?

5              THE COURT:  Judge Dooley entered another order

6    yesterday about the mandamus request and denied it.

7              MR. WACHEN:  I'm sorry.  Was that with respect to

8    this?

9              THE COURT:  I believe Mr. Wachen filed a request

10   for mandamus and Judge Dooley issued a separate order

11   yesterday with regard to that.

12             MR. WACHEN:  Wait, I'm sorry. I didn't -- as far

13   as I know, I didn't file --

14             MR. DESPINS:  Your Honor, I think it could be

15   related to the asylum, but I will check.  I apologize, I --

16             THE COURT:  It is related to the asylum, but she

17   issued two separate orders.

18             MR. DESPINS:  Okay.  Thank you, Your Honor.

19             THE COURT:  Didn't everybody see that or am I

20   making -- am I wrong?

21             MR. DESPINS:  No, I certainly saw the

22   interlocutory appeal denying -- yes, I saw that.  But I

23   guess I didn't see a separate order on the mandamus. I will

24   look at that. I apologize, Your Honor.

25             THE COURT:  Well, maybe I'm wrong  But I thought

1    there were two separate orders.

2              MR. DESPINS:  I know she denied both, but we'll --

3    it's not important. I just wanted to make sure I was on top

4    of the orders.   Thank you, Your Honor.

5              THE COURT:  All right.  Anything further?

6              MR. WACHEN:  Your Honor, I had a couple of things

7    I wanted to ask about sort of in the nature of housekeeping

8    issues.

9              First, there have been some communications to you

10   by email through the courtroom deputy's email.  And I just

11   want to understand, because I'm not as familiar with Your

12   Honor's practices, is that a permissible way for us to

13   communicate?  I mean, it's obviously more expedient than

14   filing --

15             THE COURT:  It's not my practice.  It's the

16   court's practice.  And it's listed on the website and your

17   local counsel should know that, that the way that

18   communications are made to judges in this district is

19   through the courtroom deputy box that are listed on our

20   website.

21             MR. WACHEN:  Right.  That part I understand, but

22   is it okay for us to send letters to Your Honor through that

23   email? I mean --

24             THE COURT:  Why would be an need for a letter?

25             MR. WACHEN:  Well, there have been two -- okay,

1   emails addressed to you by the trustee over the last couple

2   of days.

3          And from what I understand from my local counsel,

4   that's not a permitted practice.  And if it is, then we can

5   do that as well, but we refrained from doing that because

6   our understanding was that you preferred to have things

7   filed of record.  So that's what I'm taking issue with.

8          THE COURT:  Whatever you're talking about -- I

9   don't know what you're talking about, but yes, things should

10  be filed as of record, unless it's a communication about

11  scheduling, or submitting a proposed order that I asked for

12  that didn't need to be docketed.  Something along those

13  lines.  I don't-- I take letters. Or if a -- letter comes

14  in, it gets docketed on the docket of the case.

15         MR. WACHEN:  Okay.  Because Mr. Sarnoff I think it

16  was a couple -- two or three days ago, sent an email to Your

17  Honor to bring to Your Honor's attention what he perceived

18  to be some issues with compliance with the TRO and asking

19  the court to rule and then the next day -- maybe that day

20  there was a ruling.  So it --

21         THE COURT:  Well, Mr. Wachen, I don't know what

22  you're actually talking about at the moment, but that's

23  fine.  You know, it goes to the courtroom deputy box. That's

24  how it works.  So that doesn't mean it comes to me

25  automatically, right?  It takes steps.  There are steps,

1    number one.  Number two, as I think you can probably tell

2    from the length of the decision, I didn't just work on it

3    two days ago.

4              MR. WACHEN:  I understand. I think I said Mr.

5    Sarnoff.  It wasn't Mr. Sarnoff.  I think it was

6    (indiscernible), Mr. Despins and Mr. (indiscernible) .

7              MR. DESPINS:  Local counsel, yes.

8              MR. WACHEN:  Okay.  Then the other question I

9    wanted to ask Your Honor, there is a pretrial conference

10   scheduled for January 24th at 2:00 p.m.

11             Mr. Hellman is going to be away that day and that

12   day --

13             THE COURT:  If we go forward with that, Mr.

14   Wachen, he doesn't need to be here, if that's your question.

15             Well, that's question number one. Is that pretrial

16   conference going to be in person or is that going to be --

17   in which case I may have a scheduling issues as well, or is

18   it going to be by Zoom like this.

19             THE COURT:  I don't even know if we're going to

20   have a pretrial conference, honestly, at this point. It

21   depends upon what you all tell me next week.

22             And that pretrial conference is set automatically

23   at the commencement of every adversary proceeding. The judge

24   doesn't have any impact on that. That's a clerk's office

25   administration process where if an adversary proceeding is

1    filed -- I believe that's what that was.  That was the

2    original pretrial conference set in this adversary

3    proceeding.

4          And if this adversary proceeding was what I would

5    -- more of what I would say a standard adversary proceeding,

6    we may not have talked already until that pretrial, right?

7          But in this adversary we've talked a lot, so we

8    may not actually go forward with that adversary proceeding

9    as scheduled.

10          That is, as I've indicated, that is what I would

11    call the initial pretrial conference that's set in

12    connection with the summons in the adversary proceeding. I

13    believe that's what the 24th is. It was set through the

14    summons that was issued by the clerk's office.

15          Does that answer your question?  I'll let you know

16    next week definitely.

17          MR. WACHEN:  Yes.

18          THE COURT:  I'll let you know next week but I can

19    tell you right now there's no need for a pretrial conference

20    on January 24th.

21          MR. WACHEN:  Okay.  Very good.  That's what I

22    wanted to understand.

23          THE COURT:  No, I'm glad you brought it up because

24    it is an administrative setting by the clerk's office with

25    the summons.

1          And as I said, normally I haven't even seen the

2     parties yet when it comes to that point in an adversary

3     proceeding.  But this is not that kind of an adversary

4     proceeding.  Okay?

5               MR. WACHEN:  Thank you.

6               THE COURT:  All right.  Anything further?

7          All right.  Well, thank you all for making

8     yourselves available.  We have nothing else today in this

9     matter so court is adjourned.

10              (Proceedings concluded at 10:05 a.m.)

11

12              I, CHRISTINE FIORE, Certified Electronic

13    Court Reporter and Transcriber, certify that the foregoing

14    is a correct transcript from the official electronic sound

15    recording of the proceedings in the above-entitled matter.

16

17    *Christine Fiore*

18    _____          January 27, 2023

19        Christine Fiore, CERT

20

21

22

23

24