UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
| HO WAN KWOK and GENEVER | * | |
| HOLDINGS CORPORATION, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| PACIFIC ALLIANCE ASIA | * | Adv. Proc. No. 22-05032 |
| OPPORTUNITY FUND L.P., | * | |
| | * | Bridgeport, Connecticut |
| Plaintiff, | * | January 23, 2023 |
| | * | |
| v. | * | |
| | * | |
| HO WAN KWOK, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF MOTION FOR ORDER
(I) AUTHORIZING SERVICE OF TEMPORARY
RESTRAINING ORDER BY U.S. MARSHALS SERVICE and
(II) COMPELLING DEFENDANT TO APPEAR
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Plaintiff:                PETER FRIEDMAN, ESQ.
                                  STUART SARNOFF, ESQ.
                                  O'Melveny & Myers LLP
                                  Times Square Tower
                                  7 Times Square
                                  New York, NY  10036

                                  PATRICK M. BIRNEY, ESQ.
                                  Robinson & Cole LLP
                                  280 Trumbull Street
                                  Hartford, CT  06103

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES:  (Cont'd.)

| | |
|---|---|
| Chapter 11 Trustee: | LUC A. DESPINS, ESQ. |
| | Paul Hastings LLP |
| | 200 Park Avenue |
| | New York, NY  10166 |
| | |
| For the Defendant: | DAVID S. WACHEN, ESQ. |
| | Wachen LLC |
| | 11605 Montague Court |
| | Potomac, MD  20854 |

1          (Proceedings commenced at 10:29 a.m.)

2          THE COURTROOM DEPUTY:  Case no. 22-5032, Pacific

3     Alliance Opportunity Fund L.P. versus Ho Wan Kwok.

4          THE COURT:  Okay.  Good morning.  If we could have

5     appearances for the record starting with the Chapter 11

6     Trustee, please.

7          MR. DESPINS:  Good morning, Your Honor.  Luc

8     Despins, Chapter 11 Trustee.

9          THE COURT:  Good morning.

10         MR. LINSEY:  Good morning, Your Honor.  Patrick

11    Linsey for the Chapter 11 Trustee.

12         THE COURT:  Good morning.

13         MR. FRIEDMAN:  Good morning, Your Honor.  Peter

14    Friedman, of O'Melveny & Myers, on behalf of Pacific Asia

15    Opportunity Fund, joined by Mr. Sarnoff, from O'Melveny, and

16    Mr. Birney, from the Robinson & Cole firm.

17         THE COURT:  Good morning.

18         Mr. Wachen, I think you're on mute.

19         MR. WACHEN:  Good morning, Your Honor.  David

20    Wachen on behalf of Miles Kwok.

21         THE COURT:  Good morning.

22         Oh, you don't --

23         MR. WACHEN:  Your Honor --

24         THE COURT:  -- you can't see me.  Sorry.  Go

25    ahead.

1          MR. WACHEN:  I can see you now, Your Honor.  Thank

2     you.  And I appreciate the accommodation of allowing me to

3     appear by video.  I can't see anybody else, but I can see

4     you.

5          THE COURT:  Oh, sorry.  I thought we had the

6     camera on to see the courtroom so you could see the

7     courtroom.  Hold on a second.  We might be able to fix that.

8     There you go.  Can you see now?

9          MR. WACHEN:  Yeah.

10          THE COURT:  Okay.

11          MR. WACHEN:  I can.

12          THE COURT:  Thank you.

13          MR. WACHEN:  Thank you, Your Honor.

14          THE COURT:  Yes.  Thank you to the courtroom

15     deputy for taking care of that.

16          Okay.  All right.  So, Trustee Despins, this is

17     your request, so please proceed.

18          MR. DESPINS:  Thank you, Your Honor.  May I remove

19     my mask from here?

20          THE COURT:  Yes, you may.

21          MR. DESPINS:  Good morning, Your Honor.  For the

22     record, Luc Despins, Chapter 11 Trustee.

23          And this is our amended motion to have Your Honor

24     authorize the U.S. Marshals Service to -- as an alternative

25     method of service of the preliminary injunction order.  We

1   believe that it's pretty straightforward in the sense that

2   we have found numerous orders where bankruptcy courts in

3   civil matters have used U.S. Marshals to not only serve

4   orders, but actually go and seize evidence, arrest people,

5   bring even bankruptcy court petition preparers back to

6   court, so we believe that there's plenty of evidence

7   allowing the Court to direct the U.S. Marshals to do this.

8           And in this case, it makes a lot of sense.  Why?

9   Because, one, practically what is going to happen and what

10  has happened, and we point it out in our motion, but Mr.

11  Wachen said, well, there's no evidence of that, but I did

12  provide him with a declaration of service from a Connecticut

13  Marshal, not a U.S. Marshal, but a Connecticut Marshal, a

14  constable, Constable Gallup, on December 1st that attempted

15  to serve the TRO on protestors at my house and basically --

16  and, Your Honor, if I may, I provided this in advance to Mr.

17  Wachen, may I approach to give a copy to Your Honor?

18          THE COURT:  Yes.  Yes.  Thank you.

19          MR. DESPINS:  So you can see that the Connecticut

20  Marshal, which is really a private processor where they have

21  no power to detain or to verify the identity of people

22  unless people want to do that voluntarily, attempted to

23  serve the TRO.

24          And he says that they refused to identify

25  themselves so what we have is a declaration from the

1    Connecticut Marshal saying I went there, I gave them a copy

2    of the order, but I don't know who I gave it to.  And he

3    says that they're from Asian descent, but, you know, that

4    doesn't really narrow anything.

5           So that is why we said that it's important to have

6    an alternative method of service because the U.S. Marshals

7    have the ability to force people to provide identification

8    and not to run away.

9           And you'll see later on from Mr. Friedman that on

10   behalf of PAX that there was an attempt to serve the

11   preliminary injunction at Mr. Sarnoff's house where they're

12   picketing, and when the process server arrives, the

13   protestors or some of them run away.

14          So that's practically the only way to effectively

15   serve and know who you serve because that's -- if these

16   people, and we're not asking the Court to make a

17   determination today, but if these people are violating the

18   order, we need to know who they are, otherwise it's

19   pointless.

20          Mr. Wachen -- you know, the first point that I

21   want to raise is the issue of standing in a loose sense of

22   standing, Your Honor.

23          The point is Mr. Wachen doesn't represent the

24   American Civil Liberties Union.  He represents Mr. Kwok.

25   Their position is that they have no involvement in these

1    protests, that these people are acting on their own and that

2    he has no -- he's not owning to this.  Obviously, you know

3    our views on that.  But the point is their position in the

4    case is that he has no involvement in these protests.

5           So I don't understand what standing in a technical

6    sense, in a sense that he has no particular interest in this

7    at all, which is one of the tests for standing before the

8    Court, and, two, it's not directed at him.  It's directed at

9    people that are on the picket lines because he is not

10   picketing himself.

11          So that's -- to us, that's a huge issue, which is

12   on what basis is Mr. Wachen trying to get a ruling from the

13   Court that these protestors should not be served by the U.S.

14   Marshal.  No one has the right not to be served by the U.S.

15   Marshal, meaning that there's no fundamental right to that

16   effect.  The U.S. Marshals serve court orders all the time

17   on a number of people in bankruptcy cases, as we've cited

18   four or cases to that effect.  And then Mr. Wachen argues

19   that this is premature.

20          Your Honor, the order is being violated every day.

21   It's violated at my house, at my residence, because they're

22   not respecting the hours.  You know, if I have to I'll take

23   the stand and I'll say that, you know, on that day I went to

24   CVS.  It was, you know, 4:10 in the afternoon and they were

25   there.  And yesterday morning I went to the grocery store at

1    9:07 and they were there.  And, therefore, they're violating

2    the time restrictions of the order.  So there's no doubt

3    about that.

4            They're in front of Mr. Sarnoff's apartment, right

5    on the sidewalk in front of the house, violating not only

6    the distance requirements but also the time requirements.

7    They're there at all sorts of times that are in violation of

8    the court order.  There's no doubt that the order is being

9    violated.

10           And I'm -- I have to say I'm a bit resentful of

11   Mr. Wachen taking the position that, well, there's no

12   evidence of that, we don't know that.  We do know that.

13           At my daughter's school, elementary school, you

14   know, they're across the street.  And I had her measure it

15   this weekend.  It's 58 feet from the property line of the

16   school and so they are violating that.  They're violating

17   the time period.

18           But we're not asking the Court to find that.

19   We're just asking the Court to direct the U.S. Marshals

20   Service to serve those people, period.

21           What will flow from that, time will tell.  Because

22   maybe the U.S. Marshals Service will say, no, they're 200

23   feet from the house or they're picketing during the

24   permitted hours.  No issue.  But we know that's not the

25   case.

1        So we're not asking the Court to make any findings

2   today other than the finding that it is beneficial and it's

3   effective to have the U.S. Marshal serve the order.

4        And we've taken the liberty to move into the order

5   the prohibitions on time and distance so the U.S. Marshals

6   have one little -- one page they can look at so it's not

7   confusing to them because the order has reference to case

8   law and all of that so we took that out.

9        We just took the actual operative provisions of

10  the order and repeated those in the order so that there

11  would be no confusion as to what they're looking for.

12       And really that's all we're asking the Court to

13  authorize today.

14       We're not asking the Court to make any findings

15  other than it is necessary and effective to have an

16  effective enforcement of the preliminary injunction order to

17  have the U.S. Marshal do this.

18       We know -- as I said, we know that they will evade

19  service, meaning they will not identify themselves or they

20  will run away when there's an attempt to serve them.  We

21  know that from the report from Constable Gallup regarding

22  the TRO.  And we'll hear from Mr. Friedman in a minute about

23  other evidence of that.

24       Your Honor, there's an argument that was made by

25  Mr. Wachen that really disturbed me which is, well, we don't

1  know.  Maybe these people are walking by and joining the

2  protestors, you know.  This is not like protesting the

3  Vietnam War in the '60s, '70s.  Nobody is stopping by and

4  protesting.  This is organized protests.  They're dropped

5  off.  I see them.  They're dropped off near my house by cars

6  in the morning.  They're picked up at 5:30 or 5:20 every

7  day.  This is organized protests.  There's no -- no citizen

8  is going around saying, oh, this is an interesting issue,

9  let me join them.  There's none of that.

10      And I find that really troubling that, you know,

11  there's a suggestion that, in fact, well, maybe there's a

12  lawyer at Zeisler that would like to join this or something

13  like that, or a cousin, there's none of that.  Your Honor,

14  there's none of that.

15      This is all organized protests.  They're filming

16  themselves and posting that on the internet.  And you can

17  see them on the New State Federation, or whatever it's

18  called, China.  They post on GETTR.  And they show

19  themselves exactly where they are.

20      You can see them across from my daughter's school,

21  you know.  We know that that's -- anybody can see that's not

22  100 feet.  And we know.  They actually have the timestamp so

23  you can -- anybody can see that.  There's no doubt about

24  that.

25      And the question is we have no budget to bring

1    another -- the trustee doesn't have a budget to bring

2    another testifying expert like the one from -- that was used

3    during the preliminary injunction order to authenticate all

4    this, but I can tell you myself they're violating in terms

5    of time near my house.

6          You'll hear from Mr. Friedman regarding the fact

7    that they are at the doorstep of Mr. Sarnoff's apartment

8    every day violating the distance and the time.

9          And I'm telling you they're at my daughter's

10   school every day across the street, and that is just not

11   okay and it needs to stop.

12         And the only way -- the first step in making this

13   stop is that the order must be served on them and we need to

14   know who we're serving.

15         Unless Your Honor has questions, that's all I

16   have.

17         THE COURT:  I don't have any questions.  Thank

18   you.

19         MR. DESPINS:  Thank you.

20         MR. FRIEDMAN:  Good morning, Your Honor.  Peter

21   Friedman of O'Melveny & Myers on behalf of PAX.

22         Your Honor, I don't think this is an issue that

23   requires evidence, but we do have a witness here who

24   observed the goings-on at Mr. Sarnoff's apartment on -- over

25   the weekend.

1          If the Court believes it's necessary, we have a

2   witness named Nicholas Palmieri who would testify that he

3   observed people trying to effectuate service, that documents

4   were thrown on the ground, that there were heated

5   conversations, that there were people who were there at

6   times after -- at Mr. Sarnoff's apartment at times after the

7   time restrictions.

8          He's also in court and would testify if necessary

9   that the people stood directly in front of Mr. Sarnoff's

10  building.

11         And this is a person who's a retired law

12  enforcement officer who's been trained over the years and

13  has testified a hundred times in courts about his

14  observations of -- as a percipient witness observing

15  engagements that he was involved in.

16         Again, I don't think it's necessary, but we

17  certainly have a witness available in court who also took

18  videos and pictures.  We sent those videos and pictures to

19  Mr. Wachen last night.  Your Honor --

20         But I want to make a point about why I don't think

21  evidence is necessary here.  I think the -- I don't read the

22  cases as saying there has to be a quantum of evidence

23  necessary for the Court to decide in its discretion based on

24  everything it already knows.

25         As to whether it's appropriate to have a marshal

1   service an order, this is a case where there is a

2   -- I believe, as the Court has already found, a concerted

3   effort by Mr. Kwok and entities he controls, including a

4   list of people who the Court found were acting in concert

5   under Rule 65, and organizations engaging in conduct

6   designed to disrupt a Chapter 11 case, where the Court --

7   where the Court also heard evidence of people making

8   threats, where the Court saw people screaming and yelling

9   outside of Mr. Despins' office, where the Court heard people

10  threatening consequences for people who, you know, who got

11  on the wrong side of Mr. Kwok, continued substantial

12  engagement between private actors, who are working for our

13  clients, seems only likely to increase the temperature as

14  opposed to having a neutral party cloaked with law

15  enforcement authority if necessary, but acting not at the

16  behest of any private party, but rather acting at the

17  direction of the Untied States Government.

18          It seems more likely in this circumstance, I think

19  the Court could conclude, to lead to effective service of a

20  court order and to greater respect for the order that this

21  court issued rather than again having a private party try to

22  engage an enforcement when we know everything that the

23  private party does leads to greater and greater threats,

24  aggressive activity, from Mr. Kwok and those entities which

25  he controls.

1          I don't think anybody has a substantive right not

2     to be served by a U.S. Marshal.  I don't think it's

3     punitive.

4          Again, I think it's here a matter of efficacy, if

5     anything, keeping the temperature down, having people make

6     appropriate observations, having people carry out a court

7     order in the most straightforward manner.

8          Your Honor, I want to make one other point which

9     is that there is an argument -- two points.  One is, you

10    know, Mr. Wachen's argument that it's premature to have the

11    U.S. Marshals involved.

12         I think to me better premature if it is premature,

13    which we don't think it is, than too late.  Right?

14         Are we only supposed to call in the marshals when

15    there's a confrontation, an aggressive confrontation in the

16    future?  We're supposed to wait for that to happen to bring

17    in the U.S. Marshals?

18         That seems like a bad idea to wait for something

19    really bad to happen and then bring in the marshals to try

20    to effectuate service.

21         We know we're dealing with people whose purpose is

22    to disrupt and who have been involved in a larger enterprise

23    where there have been threats.  And so to just take it on

24    faith that nothing bad will happen, and then, and only then,

25    if it does, bring in the marshals seems backwards.

1      The other point I would make is that the

2   suggestion that somebody who works for Mr. Zeisler's -- Mr.

3   Kindseth's firm, or a relative of somebody who works at that

4   firm, protesting in the middle of Yale's campus against

5   apartheid could somehow get swept up into this, I don't

6   think that's right.

7      In part, because the proposed order lists cities

8   where the marshals are supposed to serve.  And those cities

9   and the places where service will be effectuated are tied to

10  specific people at this point who have been targeted for the

11  purpose of disrupting this case, and have been targeted with

12  consistent messages of antisemitism because they support the

13  Chinese Communist Party and et cetera.  Or of being running

14  dogs of the Chinese Communist Party and other very specific

15  (indiscernible), you know, robbing from pensions, other very

16  specific, targeted conduct.

17     Apartheid has nothing to do with this, right?  Nor

18  does protesting in the middle of Yale's campus, right?

19     To add a new address, we'd have to come back to

20  the Court.  And if the Court -- a new location, we'd have to

21  come back to the Court.

22     And I can only imagine how the Court would look at

23  me if I said, oh, Your Honor, the marshals should serve Mr.

24  Kindseth's nephew because he's part of an anti-apartheid

25  group in the middle of Yale's campus.  I think he'd throw me

1    out on my ear and rightly so.

2              That is not what this is about, Your Honor.

3              This is about serving a targeted set of areas

4    where this court has already seen that conduct is for the

5    purpose of disrupting this Chapter 11 case.

6              So that's all I have, Your Honor.

7              Again, I don't think this is an evidentiary issue,

8    but if the Court believes that evidence is necessary, we

9    have a witness here to testify.

10             Thank you, Your Honor.

11             THE COURT:  Thank you.

12             Mr. Wachen?

13             MR. WACHEN:  Thank you, Your Honor.

14             I think some of the points that we made in our

15   papers are being either misunderstood or mischaracterized,

16   but I just wanted to touch on a few points if I may.

17             The point about it being premature is that all the

18   protests have been peaceful.  I don't think there's been any

19   evidence that any protests have ever turned violent.  The

20   only evidence of alleged threats came from like an anonymous

21   email or an anonymous voicemail.  That was I think the

22   essence of it.

23             And none of these protests in front of Mr.

24   Despins' house, or Mr. Sarnoff's apartment building in

25   Manhattan, I don't think there's been any evidence at all

1    from anybody, let alone hearsay evidence, which before the

2    evidence was, that there was ever a threat by anybody to do

3    anything.

4            So the notion that we need to use the Marshals

5    before it's too late, the point we were making was simply

6    that it wasn't -- when they filed their motion, it wasn't

7    clear that they had even attempted to serve using private

8    process.

9            Mr. Despins still hasn't provided any indication

10   that they've attempted to serve the order as the order was

11   permitted to be served privately.  All he provided was a

12   certificate relating to the TRO.

13           And even in that case, I think he misdescribed it,

14   that it was thrown back at the -- that's not what the

15   certificate essentially says.  It just says that they tried

16   to serve these people of Asian descent.

17           So that's the point, Your Honor.  Just that it's

18   not clear that they have even tried.

19           Mr. Friedman's colleague sent me some video

20   yesterday.  It's not exactly clear what it is or who it is.

21   I'm assuming it's in front of Mr. Sarnoff's apartment

22   building in Manhattan.

23           The one thing that is pretty apparent from the

24   video and the images, if I care to show them to you, is how

25   far away these people are from the front door of the

1    apartment building.  I mean, this is a major New York street

2    and they are about -- they're practically on the street

3    itself where they're standing.  They couldn't be further

4    away.  There's a huge driveway in front of the building.

5         But be that as it may, I guess the only point,

6    Your Honor, is just that it's not clear that they've even

7    tried to serve.

8         We pointed out in our papers it's not clear that

9    they even need to ask you for permission.  They can just go

10   straight to the marshals.  Rule 4.1 of the Federal Rules of

11   Civil Procedure permits that.

12        The U.S. Marshals have a Form 285 that can be

13   used.  It's not clear to me why they -- if they think they

14   need the marshals, why don't they just go to the marshals

15   and ask them.  I don't understand why they are even

16   involving the Court at this point.

17        I think the problem, the biggest problem we have

18   is the way they sort of mischaracterized what has occurred

19   and the way they are suggesting that the people who are

20   protesting on what I think is a matter of public concern,

21   and we can debate that, but that they're doing it

22   peacefully.  They're doing it in a way that they're allowed

23   to do it under the Constitution.

24        And even under the order, the order only applies

25   to people of actual notice of the order.  And if they

1    haven't been served, there's no evidence that they have

2    actual notice.

3            And so for Mr. Despins -- I guess we take offense

4    to the notion that Mr. Despins is saying we need to serve

5    the order on these people who are violating the order.  So

6    if they're violating the order, they have actual notice of

7    the order, by definition, otherwise they're not violating

8    and (indiscernible).

9            So I think some of this rhetoric that's being used

10   on -- I agree with Mr. Friedman that there's not necessarily

11   a substantive right to not be served, but this issue has

12   sort of been clouded by these allegations that there are

13   people out there flouting Your Honor's order, and that I

14   just don't think is the case.

15           The other -- the proposed order by Mr. Despins has

16   a lot of troubling aspects.

17           First of all, he puts in there the idea that the

18   Court should allow the marshals to use reasonable force.

19   It's not clear what reasonable force is.  And he doesn't

20   discuss it in his motion, but it doesn't seem appropriate in

21   these circumstances, Your Honor, to use reasonable force to

22   serve a copy of the Court's order.  He doesn't cite any

23   authority for that.

24           In fact, the one case that even touches on it that

25   he cites says that the Marshalss acknowledge that they don't

1    have the right to use reasonable force.  That's the *SLK* case

2    that they cite.  That it's not appropriate I should say.

3           Paragraph 6 of their proposed order

4    mischaracterizes the order.  I think if the order -- the

5    order just ought to speak for itself.

6           If Your Honor's going to order the Marshals to

7    effect service, then I think it should be limited to that

8    specific request or direction.  And the order says what it

9    says and the Marshals can read the order and interpret it

10   themselves.

11          But for Mr. Despins to kind of misdescribe and

12   mischaracterize it the way he has in paragraph 6 and

13   paragraph 2, among other places, we think is inappropriate.

14          And so, Your Honor, that is our main concern.

15          We're not -- we're not opposed to these people who

16   are affected by the order being served.  We just don't think

17   that the way they're proposing to do it is appropriate under

18   these circumstances.

19          THE COURT:  Okay.  Anything further, Mr. Wachen?

20          MR. WACHEN:  That's it, Your Honor.  Thank you.

21          THE COURT:  Thank you.

22          Mr. Despins, would you like to respond?

23          MR. DESPINS:  Very briefly, Your Honor.

24          First, not a word on the issue of standing,

25   meaning who does he represent?  He represents the defendant.

1   The defendant is not picketing.  So, you know, again, does

2   he represent the ACLU?

3          Two, on the premature issue, the test is not

4   whether it's peaceful or not.  The Court order doesn't say,

5   hey, you guys can do whatever you want as long as it's

6   peaceful.  It has very strict limitations on time and place.

7   So the concept that because it's peaceful they can violate

8   those provisions is -- I don't know where that's coming

9   from.

10          And by the way, as I said, there's no finding by

11   the Court here that we're asking it to make -- only to

12   authorize a service.

13          The issue about Mr. Sarnoff's house being very

14   far, there at the property line.  I mean, I can see in the

15   video itself.  They're here and the property line is right

16   there.  They're five feet from the property line of the

17   building.

18          The argument that 4.1 authorizes this, Your Honor,

19   I guess Mr. Wachen gets a Mulligan on that because he's not

20   a bankruptcy lawyer.  But 4.1(a) does not apply in

21   bankruptcy.  So I think 7004 does not incorporate that

22   section, sorry, that rule in the bankruptcy rules.

23          The bottom line is the U.S. Marshals will not,

24   they were very clear with me, will not do anything without a

25   court order.  And I don't blame them.  They will do certain

1    things if they're directed to do so.

2         And by the way, I'll be candid with Your Honor, I

3    know nothing or very little about the First Amendment, so I

4    made a joke about Mr. Wachen getting a Mulligan.  I hope

5    I'll get a Mulligan on the First Amendment point.

6         But the point is these provisions in the order

7    regarding they may detain them just for the purpose, that

8    comes from the U.S. Marshals meaning they told me that

9    what's going to happen is that if they try to serve and they

10   can't stop them, they will run away.

11        That's exactly what happened when there was an

12   attempt to serve the preliminary injunction at Mr. Sarnoff's

13   house.  Some of them just bolted.

14        That's why the U.S. Marshals needs to use

15   reasonable force for the sole purpose of identifying them.

16   These guys are professionals.  That's what they do for a

17   living.  I'm sure they will know how to handle themselves.

18        And by the way, the court order says in their

19   reasonable discretion.  And so nobody's going to get shot

20   here.  There's none of that.  So that's not an issue.  And,

21   again, it's for the limited purpose of identifying them.

22        Then Mr. Wachen says, well, paragraph 6 is really

23   -- paragraph 6 of the proposed order is really not good or

24   accurate or something like that.

25        Your Honor, we took that verbatim from your

1    preliminary injunction order.  If we got it wrong, I'm sure

2    you'll correct it.  But I'm pretty sure we took it word for

3    word except we took out the case law cites and all that.

4              Why we did that?  Because if we give them the

5    eight-page preliminary injunction order, them being the U.S.

6    Marshals Service, I think that it makes it harder for them

7    to actually understand because there are all these

8    references to case law and all that.

9              So this, what we propose here, is what we think

10   the order says.  If I got it wrong, Your Honor, please tell

11   me.  I don't -- I think it's word for word from the order.

12             And Mr. Wachen doesn't say how it's not accurate,

13   so I think that that's important.

14             But, again, I would end on the point about

15   standing.  There's not a word that was said about that by

16   Mr. Wachen.

17             Thank you, Your Honor.

18             THE COURT:  Thank you.

19             MR. FRIEDMAN:  Good morning, Your Honor.  It's

20   Peter Friedman again.  Thank you.

21             I just have one thing to say, which is, what I

22   understood Mr. Kwok's counsel's argument to be about part of

23   this is that people don't know, they can't be violating the

24   order because they don't know that they've been served so

25   how can they -- or they haven't been served, how can they

1    know they're violating -- how can they be in violation of an

2    order that they don't know exists?

3          But at the same time what they want to do is to

4    kneecap the most effective way of ensuring service.

5          So if there's any question about whether people

6    have been served, right -- and, again, we have certificates

7    of service through mail, et cetera, all of which we can, you

8    know, sort of put before the Court at some later date if we

9    need to in some form or another -- but if there's any doubt

10   as to whether there's been effective service so people can

11   know whether they're in violation or not of an order, I

12   think what Mr. Despins has proposed is the best way to do

13   it.  That's the way to eliminate the problem.

14         Thank you, Your Honor.

15         THE COURT:  Thank you.

16         Mr. Wachen, any response?

17         MR. WACHEN:  Yes.  Yes, Your Honor.

18         On the issue of standing, I mean, we're obviously

19   a party in this case.

20         And they have alleged -- I mean, it seems like

21   they want to have it both ways.  On the one hand, we don't

22   have standing to basically raise issues about people who are

23   allegedly acting in concert with us who are the people

24   affected by the order.  Well, then, it seems like they're

25   almost acknowledging our argument that these people are not

1    acting in concert, in concert with us.

2           But we think we do have standing.  We're happy to

3    discuss that further.  We do talk about it in our papers.

4           The point about them being peaceful was simply --

5    it doesn't have to do with the scope of the order.  It has

6    to do with this issue about -- that Mr. Friedman raised

7    about serving these people privately, that we ought to use

8    the marshals before it's too late suggests there's going to

9    be some violence when a private process server attempts to

10   serve them.

11          And my only point was up to this point there's

12   been -- these persons have all been peaceful.  That's what

13   the point is.  There's no reason to expect that they would

14   be violent.

15          One thing I neglected to mention before, and I

16   apologize, was this point about that we say at the end of

17   our opposition about the -- or response I should say --

18   about the hypothetical (indiscernible).  (Indiscernible) not

19   about the service issue and more about the scope of the

20   order.  That was sort of the point we were making.  That

21   just the scope of the order interpreted on its face as it's

22   written is so expansive that it could apply in that

23   scenario.  Not so much having to do with the service issue,

24   but it does -- the way the trustee has described the order

25   in their proposed order, which we think is not accurate or

1    not reflective of what the Court said, sort of dovetails

2    into our point about the scope of the order.  So that was

3    it.

4            And on the force issue, I agree that the marshals

5    are professional, and I would just leave it to the marshals

6    to act professionally.  I don't think the Court needs to

7    order them to use reasonable force.  That's our concern.

8            And so I think that's -- I appreciate the Mulligan

9    on Rule 4.1.

10           And I think I would agree that Mr. Despins doesn't

11   seem to understand the scope of the First Amendment because

12   I think a lot of what he's asked for in this case is way

13   beyond the scope.

14           And hopefully we can have a discussion when we're

15   done with this issue and the issue of certification, which I

16   know Your Honor wanted to discuss further when we met last

17   time.

18           So that's all I have to say on the service issue,

19   Your Honor, unless you have any questions.

20           THE COURT:  No.  I don't have any questions.

21   Thank you.

22           Okay.  With regard to the motion, the amended

23   motion, and the response, I will review this and issue a

24   ruling later today.

25           With regard to the certification issue that we

1    talked about last week, I think it was last week, and I know

2    the parties hadn't had an opportunity to think about it, but

3    we -- Mr. Wachen just raised it, and I was going to raise

4    it, is there anything further anyone wants to discuss about

5    the certification issue?

6          Trustee Despins?  Certification of the appeal to

7    the -- direct appeal to the Second Circuit is what I'm

8    talking about.

9          Because Mr. Wachen has already stated that he's

10   going to appeal the preliminary injunction order, which I'm

11   not surprised, so I had raised this issue.  And I think

12   parties were going to talk about it, but apparently -- I

13   don't -- I guess no one really has or have you talked about

14   it?

15         MR. DESPINS:  Well, I should say that there were

16   exchanges of email between Mr. Friedman and Mr. Wachen about

17   this, and I was ultimately copied on those, so Mr. Friedman

18   may want to.

19         MR. FRIEDMAN:  Your Honor, we just have a

20   disagreement as to whether it's appropriate in this

21   circumstance.

22         And our view is that if Mr. Wachen wants to move

23   to certify, we should be able to evaluate what his rationale

24   and a motion is and respond.

25         THE COURT:  Okay.  Thank you.

1          Mr. Wachen?

2          MR. WACHEN:  Yeah.  Your Honor, we did reach out.

3    We didn't reach out to Mr. Despins specifically because

4    there's this strange dynamic where he is represented by

5    counsel.  So we did reach out to Mr. Bassett, who is Mr.

6    Despins' counsel, and I assume he told Mr. Despins about it.

7    But I guess we're a little uncomfortable, because Mr.

8    Despins is a represented party, of communicating directly

9    with him.

10          But we reached out to Mr. Despins and Mr. Friedman

11   about -- as a follow up to Your Honor -- I think it was a

12   little over a week ago when we had the hearing on the 13th

13   -- and we believe it is appropriate to certify -- for Your

14   Honor to certify this to the Second Circuit.

15          There are fundamental issues here, Constitutional

16   rights, issues about jurisdiction, issues about standing.

17   This is a matter of public importance to the extent the

18   Court has issued a sweeping restricting the ability of

19   people to engage in protest, engage in picketing, engage in

20   association, speaking out on issues in certain places on

21   certain subjects, using certain words.

22          It's not (indiscernible) in a lot of respects.

23   And the range of restriction is breathtaking, Your Honor.  I

24   mean, it's just -- I mean, the cases that Your Honor cites,

25   the (indiscernible) case and the (indiscernible) case don't

1    support what Your Honor has done.  And so we're very

2    troubled by it.

3            And the concern we have here, Your Honor, is it's

4    obvious that Mr. Despins and PAX would prefer this order to

5    stay in place as long as it can, and that by not going

6    directly to the Second Circuit they must think that it's

7    going to take longer to get resolved on appeal, and so in

8    the meantime fundamental rights are being affected.

9            And it seems Your Honor was at least considering

10   the possibility of certifying the order sua sponte to the

11   Second Circuit which we thought would be appropriate here.

12   We were hoping the other side would join us in that, but

13   they -- and we're happy to have a discussion with them.  You

14   know, they just said they weren't interested in

15   certification so that was sort of the end of the discussion.

16           But we did, we did attempt to do that.  I don't

17   want you to think that we didn't.

18           And then we circled back with the Court to try to

19   schedule a status conference to discuss (indiscernible) Your

20   Honor wanted to do.

21           But we think that -- and the rule provides -- as

22   Your Honor I'm sure knows, the rule provides for the Court

23   to certify it on its own sua sponte which we think would be

24   appropriate here.  It would even shorten up the process.

25   And the other side would have the opportunity to submit a

1    response within 14 days or a statement if it wanted to.

2         But then the appeal would get heard by a court

3    that deals with appeals on a regular basis resolving

4    fundamental Constitutional rights, as well as issues about

5    jurisdiction, and the scope of whether this whole matter

6    should be in the bankruptcy court to begin with is an issue

7    that we raise throughout.  Whether the other side has stated

8    a claim for relief is another issue we've raised throughout.

9         So there's these fundamental issues that we

10   believe really need to be sorted out quickly on appeal while

11   people's rights are being -- are being impacted by what we

12   believe is an unconstitutional order.

13        THE COURT:  Okay.  Thank you, Mr. Wachen.

14        MR. DESPINS:  Your Honor, if I may be heard

15   briefly on this?

16        THE COURT:  Yes.

17        MR. DESPINS:  So, Your Honor, from the point of

18   view of the trustee, one of the things that guided our

19   thinking on this is frankly the speed at which the district

20   court ruled on the protective order issue regarding the

21   asylum.  I mean, that was -- I don't want to be cavalier

22   about this but that was lightening fast.

23        So the concern about delay really is not there,

24   because based on that we believe that there would be a very

25   quick turnaround in the district court and that's why we

1    believe that it was appropriate to go through that step.

2           Thank you, Your Honor.

3           THE COURT:  Thank you.

4           Mr. Friedman?

5           MR. FRIEDMAN:  Yeah.  Your Honor, I would just say

6    that issues of bankruptcy jurisdiction, issues of First

7    Amendment are issues that a district court is well familiar

8    with.

9           Frankly, if this case wasn't -- if under *Stern*

10   this case wasn't to be heard in a bankruptcy court it would

11   be heard in a district court, so a district court would be

12   evaluating these issues anyway.

13          I think a district court is perfectly capable of

14   evaluating this court's very detailed and thoughtful opinion

15   that relies heavily on findings of fact, many of which will

16   be subject to, you know, not de novo review and so we don't

17   see any reason to shortcut the normal appellate process in

18   bankruptcy cases.  That's our view.  And so we --

19          Again, if Mr. Wachen wants to file a motion, we

20   believe it should be dealt with the way every other motion

21   in this case has been responded, you know, dealt with, which

22   is we'll file a response.

23          THE COURT:  Okay.  Anything further?

24          MR. WACHEN:  Your Honor, this issue is ultimately

25   I think going to end up in the Second Circuit one way or the

1    other.

2              And so it just -- and this is nothing to be

3    critical of the district judge, who from what I understand

4    is very capable and very well regarded, so it's not a

5    question of the district judge couldn't deal with these

6    issues, and does deal with issues about the First Amendment

7    on a regular basis, I'm sure she does, but the district

8    judge is a trial judge generally speaking, not an appellate

9    judge.

10             And so it seems that for something like this where

11   the fundamental rights are being affected that this should

12   really be going to an appellate court, and an appellate

13   court that has the resources to address this in an expedient

14   manner.

15             I'm sure the district judge could, but I don't

16   know if a district judge could be sitting for a month-long

17   trial.

18             And so it's just -- it's one judge and a group of

19   law clerks versus many judges that set out to handle

20   expedited appeals, that are set up to handle that.  All they

21   do is appeals and they are very well (indiscernible) the

22   Second Circuit and they're very (indiscernible).

23             And it seems like on something like this, given

24   the issues that we're talking about, and given the rights

25   that are being impacted -- and Your Honor recognized the

1    serious issues that are -- that are at stake on the 13th --

2    that this belongs in front of a court like the Second

3    Circuit.

4            THE COURT:  Okay.  Thank you.

5            Anyone else wish to be heard?

6     (No response.)

7            THE COURT:  Okay.  With regard to tomorrow, we

8    have -- and there isn't any hearings in this adversary

9    proceeding tomorrow, Mr. Wachen, but there are hearings in

10   the main case and in certain other adversary proceedings.

11           One of the matters is scheduled at 1 p.m. and the

12   rest are scheduled at 2:00.  Do the parties want to start

13   the 1 p.m. matter at 1:00, or should we -- I don't know how

14   long people -- there's obviously an opposition to that

15   motion, isn't there, for the further extending the sale

16   process?

17           MR. DESPINS:  There are two, Your Honor, two.

18           THE COURT:  Right.  So should we keep it at 1

19   o'clock to give enough time for that hearing?

20           MR. DESPINS:  Sure, Your Honor.

21           THE COURT:  Okay.  I just want to make sure so

22   that people aren't waiting around.  Okay.

23           So with regard to tomorrow, we'll keep everything

24   as scheduled.

25           With regard to today, I will take the motion.  As

1    I said, I'm going to go back and look at it, but I will

2    issue an order today.

3              So that concludes --

4              MR. WACHEN:  Your Honor?

5              THE COURT:  Yes.

6              MR. WACHEN:  Your Honor, I'm sorry to interrupt,

7    but one other housekeeping question I wanted to ask you

8    about.

9              On Thursday, there is a hearing I believe in this

10   case involving a motion that the trustee filed both in the

11   main case and in this case, a motion to compel.

12             It seems like it primarily affects the main case

13   than our case here, but to the extent he's pursuing it in

14   our case, I feel like Mr. Kwok needs to be represented by

15   counsel in this case.  And since I'm still away and Mr.

16   Hellman is still away, would it be okay for me to appear at

17   that hearing on Thursday by Zoom?

18             THE COURT:  Does anyone have an opposition to --

19   no one has an opposition to Mr. Wachen?  Okay.

20             No one in the courtroom has any opposition to you

21   appearing by Zoom on Thursday.  So I'm not going to enter an

22   order.  You don't have to file a motion.  You'll be allowed

23   to appear at that hearing via Zoom.  Okay?

24             MR. WACHEN:  Thank you, Your Honor.

25             THE COURT:  All right.  You're welcome.

1          MR. DESPINS:  Your Honor, a housekeeping matter?

2          THE COURT:  Yes.

3          MR. DESPINS:  You issued an order saying there

4    should be a status conference on Thursday regarding the Epiq

5    retention.

6          THE COURT:  Yes.

7          MR. DESPINS:  And if you could give us some

8    guidance to prepare for that, because I -- that's a -- I

9    mean, you must have some concerns.

10         THE COURT:  Well, I can tell -- the guidance I can

11   give you is that there are issues with regard to the proofs

12   of claim that are being filed or have been filed.  I'm not

13   even sure yet.  I mean, I'm not looking at everything that's

14   happening.  And the issue of what they're serving.  They're

15   now serving a number of things that I didn't think they were

16   going to do.  And the order doesn't address some of what's

17   going on.

18         The order that authorized their retention does not

19   address some of what is happening and we have to make sure

20   we have everything buttoned down so I know what Epiq's

21   doing, how they're doing it.

22         So, for example, here's an example I guess I could

23   give you.

24         What if someone comes to the clerk's office with a

25   -- because they can -- with a proof of claim that they

1    allege should be filed under seal.  The clerk's office would

2    in most instances send that to Epiq I guess.  That's what's

3    supposed to happen.  But the order doesn't indicate the

4    proper -- doesn't address all of these issues and I want to

5    make sure that whatever the order is authorizing whatever it

6    is Epiq is doing is clear.

7          It also appears that Epiq is serving orders, a

8    number of orders, and I didn't think they were going to do

9    that.  I thought the issue was that they were just going to

10   -- and maybe I'm wrong, so that's why we're having a status

11   conference, okay -- but the clerk's office has a number of

12   questions about what is supposed to happen and how these

13   issues are supposed to be dealt with from the -- from their

14   perspective.

15         And they've said that there are issues that they

16   aren't sure what is the situation, so we're going to

17   finalize all that on Thursday, okay, and make sure we

18   understand what everyone's doing in connection with that,

19   that retention.  Okay?

20         MR. DESPINS:  Thank you, Your Honor.

21         Actually, I understand that the clerk's office

22   reached out to Epiq this morning.

23         THE COURT:  I have no idea.

24         MR. DESPINS:  Actually, I saw an email.  Is it

25   okay for Epiq and the clerk's office to have a discussion in

1    the meantime?

2              THE COURT:  I guess.  I have no idea.

3              MR. DESPINS:  Okay.

4              THE COURT:  I don't know what the clerk's office

5    did with regard to Epiq, so I have no idea.

6              MR. DESPINS:  Okay.

7              THE COURT:  So I really can't answer your question

8    unfortunately at the moment.

9              MR. DESPINS:  Okay.  Thank you.

10             THE COURT:  The other thing that I think is going

11   to have to be clear is there's going to have to be two

12   claims registers.  There's going to have to be a court claim

13   register and an Epiq claims register.  I don't think that's

14   clear.

15             And I think unfortunately it might be that Epiq is

16   going to have to serve everything, although we'll have to

17   talk about that.  Because if we don't -- if the clerk's

18   office doesn't have the information from the claimants, then

19   anything that the clerk's office is supposed to serve to

20   everyone isn't going to be served to everyone.  So we'll

21   have to figure that out.  I don't think it's monumental, but

22   I think it's something that needs to be figured out and

23   addressed.

24             MR. DESPINS:  Okay.

25             THE COURT:  Okay?

1          MR. DESPINS:  Yes, Your Honor.

2          THE COURT:  Under the specific circumstances of

3    this case.

4          MR. DESPINS:  Understood.

5          THE COURT:  Okay.  Thank you.

6          All right.  That concludes our hearing today.

7    Court is adjourned.

8          (Proceedings adjourned at 11:16 a.m.)

9          I, CHRISTINE FIORE, court-approved transcriber and

10    certified electronic reporter and transcriber, certify that

11    the foregoing is a correct transcript from the official

12    electronic sound recording of the proceedings in the above-

13    entitled matter.

14

15

16    _____          January 31, 2023

17      Christine Fiore, CERT

18         Transcriber

19

20

21

22

23

24